**James Bernard ISENHOWER,**
**Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 14–07–00077–CR.**

Court of Appeals of Texas,
Houston (14th Dist.).

June 10, 2008.

John J. Davis, Angleton, for appellant.

Jessica J. Pulcher, Houston, for state.

Panel consists of Justices YATES, GUZMAN, and LEE.*

### OPINION

LESLIE B. YATES, Justice.

A jury convicted appellant James Isenhower of sexual assault of a child and assessed punishment at twenty years' confinement and a $10,000 fine. On appeal, appellant contends the trial court erred by (1) failing to inform the jury of the State's election and (2) admitting testimony in violation of Texas Rule of Evidence 403. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

During appellant's sexual assault trial, the complainant, A.B.,[1] testified that when she was fourteen years[2] old, she and her mother left the Ukraine and moved to Angleton, Texas, where A.B.'s mother married an American man whom she had previously met. Due to her stepfather's abuse of her mother, A.B. and her mother left their home approximately one month later, and A.B.'s mother filed for divorce.

A.B. met appellant when she began working as a volunteer with horses and children at a business owned by appellant's wife in Angleton. At that time, appellant worked as a police officer in Danbury, Texas. A.B. testified that appellant and his wife had offered to help A.B. and her mother if they ever needed it. When A.B. and her mother fled their home, appellant and his wife offered to help them seek assistance at a women's center and file a police report. A.B. and her mother lived with appellant and his wife in their trailer for the next couple of months. Thereafter, A.B. and her mother lived with the mother of one of appellant's friends in exchange for taking care of the woman. After the woman passed away, A.B. and her mother moved into an apartment in Danbury in June 2000.

Appellant subsequently attempted to kiss A.B. on two occasions. The first incident occurred when appellant took A.B. four-wheeling. When A.B. pushed appellant away and told him "no," he asked her, "What do you have against feeling good?" The second incident took place a couple of days later at the Danbury police station.

One afternoon in late 2000, appellant visited A.B. at her apartment to show her a new four-wheeler that he had recently bought. A.B. testified that he came over at approximately 3:00 or 4:00 p.m., and that she was home alone because her mother was still at work. Afterwards, appellant had intercourse with her in the bedroom she shared with her mother. She testified that the sex occurred on the bed and that she was wearing her t-shirt but no pants or underwear and that appellant was wearing a t-shirt and shorts. She further testified that a contraceptive foam was used prior to the intercourse and that appellant told her that the contraception would prevent her from becoming pregnant. The intercourse lasted approximately five minutes. A.B. was fourteen years old at the time of the incident.

After this testimony, the trial court held an evidentiary hearing, outside of the presence of the jury, with regard to the potential admission of extraneous evidence that

---

\* Senior Justice Norman R. Lee, sitting by assignment.

1. To protect the privacy of the complainant in this case, we identify her by her initials. *See*

TEX. FAM.CODE ANN. § 109.002(d) (Vernon 2002).

2. A.B. was twenty-one years old at the time of trial.

A.B. and appellant had intercourse on numerous subsequent occasions, and that A.B. became pregnant and had an abortion. Appellant's counsel objected to the admission of the evidence as inflammatory and unfairly prejudicial. Pursuant to Article 38.37 of the Code of Criminal Procedure,[3] the court ruled that the evidence was admissible and instructed the jury that it was to consider the evidence for the limited purpose of determining the previous relationship between A.B. and appellant, if any, in connection with the offense.

A.B. testified that approximately one or two weeks after the first sexual encounter, appellant had intercourse with her again at her apartment but, this time, without contraceptive protection. After A.B. told appellant that she might be pregnant, appellant bought two pregnancy tests for A.B. After the pregnancy was confirmed, appellant told A.B.'s mother, arranged for an abortion, and accompanied A.B. and her mother to the clinic. Afterwards, appellant told A.B. not to contact the police because it would be embarrassing for her and, as a police officer, he would not be treated well in jail. A.B. testified that appellant had intercourse with her a total of approximately twenty-eight times at various locations, including the Danbury apartment, the police station, and outside of his patrol car in rural areas.

After A.B. finished the eighth grade, she and her mother moved with appellant to Colorado. Before A.B. testified about her relationship with appellant in Colorado, the trial court instructed the jury that it was to consider the extraneous evidence for the limited purpose of determining the previous relationship between A.B. and appellant, if any, in connection with the charged offense. A.B. testified that although she told appellant that she did not want to have sex with him, he had intercourse with her more than 120 times while they lived in Colorado. During that time, appellant reminded A.B. that he owned the house that they lived in, that he paid for everything, and that she could be deported. A.B. also testified that her mother and appellant had had a relationship while they lived in Texas and Colorado.

A.B. and her mother lived with appellant in Colorado for approximately four years. In 2005, after his relationship with A.B.'s mother ended, appellant ordered A.B. and her mother to move out of the house. After A.B. confided to her mother that appellant had been having intercourse with her, her mother reported appellant to the police. Appellant was subsequently arrested.

The court held another evidentiary hearing with respect to the potential admission of extraneous evidence regarding appellant's charged offense in Colorado. The court excluded appellant's written statement admitting to a sexual relationship with A.B. but ruled that testimony regarding the statement was admissible for the limited purpose of determining the previous and subsequent relationship between A.B. and appellant, if any, in connection with the charged offense.

---

**3.** Section 2 of Article 38.37 provides as follows:

Sec. 2. Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including:

(1) the state of mind of the defendant and the child; and
(2) the previous and subsequent relationship between the defendant and the child.
TEX.CODE CRIM. PROC. ANN. art. 38.37 (Vernon Supp.2007).

Deborah Davidson, a Colorado probation officer, testified that appellant had pleaded guilty to the offense of attempted sexual assault on a child by one in a position of trust. In exchange for his plea, the State recommended probation. In the course of preparing a pre-sentencing report, Davidson interviewed appellant regarding his relationship with A.B. Appellant told Davidson that, although he knew it was illegal, he had had a consensual sexual relationship with A.B.

Prior to the trial court's limiting instruction relating to the Colorado offense, defense counsel made a motion requesting that the State be required to elect the act on which it sought to convict appellant. The court granted the motion after the State rested its case-in-chief. At the close of its evidence, the State elected to seek conviction based upon the first act of sexual intercourse that occurred when A.B. was fourteen years old. Neither attorney objected to the proposed jury charge at the charge conference.

The jury found appellant guilty of sexual assault of a child and assessed his punishment at twenty years' confinement and a $10,000 fine. Appellant timely filed this appeal.

## II. ANALYSIS

### A. Election

In his first issue, appellant contends that the trial court erred in failing to inform the jury of the State's election and that such failure constituted harmful error. Specifically, he argues that after the court required the State to elect the offense upon which it would rely for conviction, and the State made its election, the court erred by failing to communicate the election to the jury. In his second issue, appellant complains that the trial court's failure to instruct the jury as to which act constituted the primary offense deprived him of his constitutional right to a unanimous verdict. Because the two issues are related, we consider them together.

### 1. Error Analysis

■ The general rule is that where one act of intercourse is alleged in the indictment and more than one act of intercourse is shown by the evidence in a sexual assault trial, the State must elect the act upon which it would rely for conviction. *See O'Neal v. State*, 746 S.W.2d 769, 771 (Tex.Crim.App.1988) (en banc). Before the State rests, the trial court has discretion to direct the State to make an election. *Phillips v. State*, 193 S.W.3d 904, 909 (Tex.Crim.App.2006) (citing *O'Neal*, 746 S.W.2d at 771). However, once the State rests its case-in-chief, upon a timely request by the defendant, the trial court must order the State to make an election and failure to do so constitutes error. *See id.*

■ Appellant does not contend that the State failed to make an election. Indeed, it is undisputed that, prior to the close of the State's evidence, appellant requested that the trial court require the State to elect the offense upon which it intended to seek a conviction, and the court granted the request. After resting its case-in-chief, the State elected to rely on the first incident of sexual intercourse that occurred when A.B. was fourteen years old.[4]

4. The prosecutor testified as follows:
 MS. KUCERA: Yes, sir. The State would make an election as to in [sic] sequence with [A.B.]'s testimony she indicated that there was a time that she was 14 that she was in her apartment located in Danbury.

And that the defendant had come over with his four-wheeler to show her the four-wheeler and they ended up having sexual intercourse in the shared bedroom of her and her mother, the only bedroom in that apartment.

Rather, appellant argues that the trial court failed to inform the jury of the State's election, and that such failure is "tantamount to denying Appellant's request to require the State to elect."

■ When the State elects the act on which it will rely for conviction, a defendant is entitled to an instruction charging the jury to consider only the elected act in deciding guilt and limiting the jury's consideration of the other unelected acts to the purposes for which they were admitted. *Rivera v. State*, 233 S.W.3d 403, 406 (Tex.App.-Waco 2007, pet. ref'd); *Duran v. State*, No. 03-02-00253-CR, 2003 WL 124196, at *4 (Tex.App.-Austin Jan.16, 2003, pet. ref'd) (mem.op.). The court charged the jury, in relevant part, as follows:

> You are instructed that there is testimony before you in this case regarding the defendant having committed an act other than the offense alleged against him in the indictment in this case. This is called an extraneous act.
>
> You cannot consider testimony of extraneous acts for any purposes unless you first find and believe beyond a reasonable doubt that the defendant committed any such extraneous acts and even then, you may only consider the same in determining the previous and subsequent relationship that existed between the defendant and the child, A.B., if any, and for no other purpose.
>
> Now, bearing in mind the foregoing instructions, if you believe from the evidence beyond a reasonable doubt, that the defendant, on or about [th] 15th day of October 2000, in the County of Brazoria, State of Texas, as alleged in the indictment, did then and there intentionally or knowingly cause the sexual organ of [A.B.], a child younger than seventeen (17) years of age and not the defendant's spouse, to contact the sexual organ of

the defendant; then you will find the defendant guilty of the offense of SEXUAL ASSAULT as alleged in the indictment.

Appellant argues that the charge did not inform the jury of the State's election because although it limited the jury to an act occurring in Texas on or about October 15, 2000, A.B. testified to two incidents of sexual intercourse that occurred in Texas in late 2000. In particular, A.B. testified about the first time appellant had intercourse with her at her apartment when she was fourteen years old. However, other than testifying that the first incident occurred when she was fourteen years old and "not very long" after she and her mother had moved into their own apartment, there was no other evidence presented to show when it occurred. A.B. also testified that she and appellant had intercourse a second time at the apartment "maybe a week, two weeks after" the first incident.

■ The State argues that there was no error because the trial court ordered the State to make an election and an election was made. This argument, however, misses the crux of appellant's argument. Appellant does not dispute that an election took place; rather, he asserts that the court's failure to inform the jury of the State's election in the charge was the equivalent of denying him his request that the State elect. The State also argues that there was no error because defense counsel had ample opportunity to object to the proposed charge or submit an alternative instruction but failed to do so. However, a party's failure to object to a proposed jury charge does not negate error, if any occurred. Instead, whether an error was objected to goes to determine the proper harm analysis to be applied. *See Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim.App.2006) (noting reviewing courts

use different standards for analyzing jury charge errors depending upon whether defendant objected at trial).

We conclude that the limiting instruction contained in the charge regarding extraneous evidence did not sufficiently clarify for the jury which alleged incident the State was relying upon for conviction. Based on the evidence presented at trial, the jury could have believed that both the first and the second incidents occurred "on or about October 15, 2000."[5] Moreover, the jury charge also instructed the jury that the State was not bound by the exact date alleged in the indictment.[6] *See Farr v. State,* 140 S.W.3d 895, 899–900 (Tex.App.-Houston [14th Dist.] 2004) (rejecting State's contention that jury charge limited jury's consideration to appellant's conduct on specific date where charge instructed jury it was not bound by specific date in indictment), *aff'd sub nom. on other grounds Phillips v. State,* 193 S.W.3d 904 (Tex.Crim.App.2006). Without a more specific instruction limiting the jury's consideration to the first incident of sexual intercourse, the court's charge as submitted did not instruct the jury to consider only the elected act in deciding appellant's guilt. Accordingly, we next determine whether such error was harmless.

### 2. Harm Analysis

■ Appellant contends that the trial court's failure to inform the jury of the State's election in the charge should be analyzed under the constitutional error standard of review. The State, however, argues that because defense counsel failed to object to the charge or submit any proposed alternative language, any error should be analyzed under the egregious harm standard of review.

In support of his position, appellant relies on *Dixon v. State,* 201 S.W.3d 731 (Tex.Crim.App.2006), *Phillips,* 193 S.W.3d at 913–14, and *Fleck v. State,* 201 S.W.3d 268 (Tex.App.-Houston [14th Dist.] 2006, no pet.). In those cases, the defendants' requests that the State elect the alleged offense upon which it intended to rely for a conviction were denied. *Dixon,* 201 S.W.3d at 732; *Phillips,* 193 S.W.3d at 907; *Fleck,* 201 S.W.3d at 270. Concluding that such a denial amounted to constitutional error, the courts then considered whether the error was harmless. *Dixon,* 201 S.W.3d at 733–36; *Phillips,* 193 S.W.3d at 913–14; *Fleck,* 201 S.W.3d at 271–72. Here, in contrast, the trial court granted appellant's request that the State make an election, and the State elected the first incident of intercourse between appellant and A.B. Thus, to the extent appellant relies on *Dixon, Phillips,* and *Fleck* to argue for application of a constitutional error standard of review, we find these cases inapposite.

■ Because we have found that the trial court erred by failing to include a more specific instruction in the charge limiting the jury's consideration to the first act of intercourse between A.B. and appellant, in light of appellant's failure to object to this charge error, we review it for egregious harm. *See Bluitt v. State,* 137 S.W.3d 51, 53 (Tex.Crim.App.2004) (where

---

**5.** Contrary to the State's assertion that "[t]he Court charged the jury that the offense date was October 15, 2000," the charge instructed the jury that the offense occurred "on or about October 15, 2000."

**6.** The charge contained the following instruction:

You are further charged as the law in this case alleging SEXUAL ASSAULT, that the State is not required to prove the exact date alleged in the indictment but may prove the offense, if any, occurred within ten (10) years of the filing of the indictment after the child's eighteenth birthday. In this case the indictment was filed on January 12, 2006.

defendant failed to object to jury charge error, court would not reverse in absence of evidence showing egregious harm to defendant) (citing *Almanza v. State,* 686 S.W.2d 157 (Tex.Crim.App.1984) (op. on reh'g)); *Middleton v. State,* 125 S.W.3d 450, 453 (Tex.Crim.App.2003) (finding degree of harm from charge error requiring reversal depends on whether appellant preserved error by objection); *Rivera,* 233 S.W.3d at 406 (where no objection is made to charge error, egregious harm standard of review is applied). Errors that result in egregious harm are those that affect the very basis of the case, deprive the defendant of a valuable right, or vitally affect a defensive theory. *Hutch v. State,* 922 S.W.2d 166, 171 (Tex.Crim.App.1996). In making an egregious harm determination, reviewing courts assess the degree of harm in light of (1) the entire jury charge, (2) the state of the evidence, including the contested issues and weight of probative evidence, (3) the arguments of counsel, and (4) any other relevant information revealed by the record as a whole. *Ngo v. State,* 175 S.W.3d 738, 750 n. 48 (Tex.Crim.App. 2005) (citing *Almanza,* 686 S.W.2d at 171); *Ellison v. State,* 86 S.W.3d 226, 228 (Tex. Crim.App.2002).

Pursuant to Article 38.37, prior to the introduction of evidence, the court gave an instruction to the jury regarding any incidents of sexual intercourse other than the first incident. Specifically, the court instructed the jury that it should only consider the testimony regarding extraneous acts for the limited purpose of determining the previous relationship between appellant and A.B., if any, in connection with the charged offense. This instruction was given before A.B. testified about the second incident of sexual intercourse, the resulting pregnancy and abortion, and the subsequent acts of intercourse in Texas and Colorado. An instruction was again given before Davidson testified about appellant's charged offense in Colorado. The only testimony that was not preceded by a limiting instruction was ·A.B.'s testimony about the first time appellant had sex with her. Thus, with these limiting instructions, the jury was made aware of which incident was the charged offense and which were extraneous acts.

With regard to the jury charge, the limiting instruction in the charge mirrored the oral instructions given by the court throughout the trial. The charge instructed the jury that it had heard testimony regarding acts committed by the defendant other than· the offense alleged in the indictment and that it could not consider such extraneous act testimony unless it first found beyond a reasonable doubt that the defendant had committed the acts. It further instructed the jury that it could then only consider them in determining the previous and subsequent relationship existing between appellant and A.B., if any.

We next consider the arguments made by counsel. In his brief, appellant acknowledges that "the prosecutor did not argue alternative criminal acts in support of conviction." In fact, in closing arguments, the State unequivocally informed the jury that "there is one act that has been alleged and it's that first one at her apartment in Danbury." Moreover, in his closing arguments, defendant's counsel emphasized that defendant was only charged with one incident of sexual intercourse that occurred when A.B. was fourteen years old. He repeatedly referred to the extraneous sexual acts as "red herrings," specifically identifying A.B.'s abortion, incidents of oral sex occurring after the abortion, and the incidents of sexual intercourse and conviction occurring in Colorado.

Finally, we note that all of the testimony regarding the sexual incidents came from only one witness, A.B. In that regard, the only incident of intercourse about which she provided any specific detail with regard to time, place, and circumstances was the first incident.[7] She testified that appellant had come to visit her one afternoon in late 2000, at approximately 3:00 or 4:00 p.m., while she was home alone to show her his new four-wheeler. Appellant then had sex with her on her bed in the bedroom that she shared with her mother. She further testified about the clothing she and appellant wore that day and that a contraceptive foam was used that appellant told her would prevent her from becoming pregnant. A.B. testified that the intercourse lasted approximately five minutes and that she was fourteen years old at the time of the incident. A.B. did not describe any of the other incidents of intercourse with this degree of detail. *See O'Neal,* 746 S.W.2d at 772 (finding it evident which act of intercourse State sought to convict upon where complaining witness testified about one distinct, detailed incident).

In light of these considerations, it was clear that the State was relying on the first incident of sexual intercourse to convict appellant. *See O'Neal,* 746 S.W.2d at 772–73 (finding that State's case-in-chief evidence clearly indicated upon which act of intercourse State sought to convict defendant and delayed election was harmless error). As such, the trial court's error in failing to give a more specific instruction in the jury charge was harmless. Issues one and two are overruled.

## B. Admission of Extraneous Offense Evidence

In his third issue, appellant contends that the trial court abused its discretion in admitting A.B.'s testimony concerning an abortion because the evidence was only marginally relevant and its probative value was significantly outweighed by its potential for unfair prejudice in violation of Texas Rule of Evidence 403. In his fourth issue, he asserts that the trial court erred in admitting testimony regarding appellant's admission of guilt to Davidson related to the offense with which he was charged in Colorado because it lacked probative value and was admitted in violation of Rule 403.

■ Rule 403 provides, in pertinent part, that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Tex.R. Evid. 403. Thus, Rule 403 recognizes that relevance alone does not ensure admissibility. *Gigliobianco v. State,* 210 S.W.3d 637, 640 (Tex.Crim.App. 2006). Even when evidence is found to be relevant under article 38.37, as it was here, when the defendant makes a Rule 403 objection, the court has a non-discretionary obligation to weigh the probative value of the evidence against the unfair prejudice of its admission. *See Montgomery v. State,* 810 S.W.2d 372, 389 (Tex.Crim.App. 1990) (op. on reh'g) (en banc); *Hinojosa v. State,* 995 S.W.2d 955, 957 (Tex.App.-Houston [14th Dist.] 1999, no pet.).

■ Factors to be considered in this balancing process include: (1) how compellingly the extraneous offense evidence serves to make a fact of consequence more or less probable, (2) the potential the other offense evidence has to impress the jury "in some irrational but nevertheless indelible way," (3) the time the proponent will

---

7. Appellant argues that a considerable amount of time was spent on the evidence concerning the abortion. However, this testimony focused on the abortion itself, rather than the intercourse, and was immediately preceded by a limiting instruction from the court.

need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense, and (4) the force of the proponent's need for this evidence to prove a fact of consequence, *i.e.,* whether the proponent has other probative evidence available to him to help establish this fact, and whether the fact related to an issue in dispute. *See Santellan v. State,* 939 S.W.2d 155, 169 (Tex.Crim.App. 1997) (en banc) (citing *Montgomery,* 810 S.W.2d at 389–90). In overruling such an objection, the court is assumed to have applied a Rule 403 balancing test and determined the evidence was admissible. *Hinojosa,* 995 S.W.2d at 957. Appellate review on the admissibility of evidence is conducted under an abuse of discretion standard. *Weatherred v. State,* 15 S.W.3d 540, 542 (Tex.Crim.App.2000). An appellate court is bound to uphold the trial court's ruling regarding the admissibility of evidence if it was within the zone of reasonable disagreement. *Id.*

### 1. Abortion Evidence

 Prior to voir dire, appellant filed a motion in limine seeking to exclude from evidence any reference to an abortion or appellant's involvement in such a procedure. The court granted the motion for purposes of voir dire and later conducted a hearing outside the presence of the jury to consider its admissibility at trial. At the conclusion of the hearing, defense counsel objected to the admission of the evidence under Rule 403, among other grounds, arguing that the evidence was only marginally relevant and was significantly outweighed by its inflammatory and prejudicial nature. Following the hearing, the court overruled defendant's objections and found the evidence regarding A.B.'s alleged abortion admissible under article 38.37, subject to a limiting instruction. After the jury returned, the court instructed that it was only to consider the

evidence for the limited purpose of determining the previous relationship between appellant and A.B., if any, in connection with the charged offense.

A.B. testified that, during the time period when appellant was having sex with her, she learned that she was pregnant after missing her period. After she told appellant, who was "a little bit upset" by the news, she took two pregnancy tests that appellant had bought which confirmed her pregnancy. A.B. testified that appellant took her to a clinic to have an abortion and that she was fifteen years old at the time. A.B. further testified that appellant told her mother that A.B. was pregnant and was going to have an abortion and that her mother went with them to the clinic. Appellant told A.B. not to call the police because it would be embarrassing for her and he could not go to jail because, as a police officer, he would not be treated well. A.B. testified that appellant instructed her to throw away the paperwork that she had received from the clinic so that there would "be no trail" and that her mother threw it away.

Appellant argues that the trial court abused its discretion in admitting A.B.'s testimony regarding her abortion because it was inadmissible under the Rule 403 balancing test. He first contends that the probative value of the evidence was low because it corroborated an extraneous offense, *i.e.,* the second incident of intercourse, rather than the first incident upon which the State sought to convict him. However, while it is true that the evidence bore directly on the second incident of intercourse, this was not its only value. The record reflects that A.B.'s delayed outcry was a hotly contested issue. Defense counsel questioned A.B. repeatedly as to why she did not complain about appellant to anyone for "a five or six-year span." In his closing arguments, defense

counsel emphasized the delayed outcry to support the defense's theory that A.B. only reported appellant to the authorities after he ordered her and her mother to leave the house in Colorado and stopped supporting them. A.B. testified that appellant bought the two pregnancy tests, he found a clinic to perform the abortion, he told her not to call the police because it would be embarrassing for her and he could not go to jail, and he instructed her to throw away the paperwork from the clinic. On cross-examination, defense counsel asked A.B. the following:

Q: [E]verybody just goes rolling off to the abortion provider is your story, right?

A: That's what we were told to do.

Q: You always do what you are told to do?

A: Yes, sir.

■ Evidence of an extraneous offense is admissible to explain why a victim of sexual assault did not make a prompt outcry. *See Brown v. State,* 657 S.W.2d 117, 119 (Tex.Crim.App.1983) (holding that sexual assault victim's testimony that appellant threatened to kill her family was admissible to show reason for delayed outcry); *Wilson v. State,* 90 S.W.3d 391, 394 (Tex.App.-Dallas 2002, no pet.) (holding trial court properly admitted complainant's testimony about appellant's assault of her mother because it explained why complainant did not promptly report abuse); *see also Mark v. State,* No. 14–01–01137–CR, 2003 WL 193070, at *5 (Tex.App.-Houston [14th Dist.] Jan. 30, 2003, pet. ref'd) (not designated for publication) (finding trial court did not abuse discretion in admitting mother's testimony regarding appellant's violence where evidence demonstrated why victim was afraid of appellant and failed to make prompt outcry). Thus, A.B.'s testimony regarding her abortion demonstrated the degree of control that appellant exerted over A.B. and explained her delayed outcry.

Appellant next argues that the testimony regarding A.B.'s abortion was unfairly prejudicial because of the extremely inflammatory nature of the subject and its potential to impress the jury. The State acknowledges that abortion is an inflammatory subject but argues that "when the issue is part and parcel of the charged offense its potential to impress the jury is reduced." The State cites to no authority to support its position, nor are we aware of any.

As to the amount of time needed to develop the evidence, the record reflects that the testimony regarding A.B.'s abortion, including direct, re-direct and cross-examination, took approximately seventeen pages versus ten pages of testimony related to the charged offense. With regard to the State's need for the evidence, A.B.'s testimony regarding her abortion was perhaps the most probative evidence demonstrating the degree of control that appellant exerted over A.B., which supported the State's explanation for A.B.'s delayed outcry.

We conclude that even though the evidence was inflammatory and took a relatively disproportionate amount of time to develop, the evidence of A.B.'s abortion admitted under article 38.37 was properly admitted under the Rule 403 balancing test based on its probative value in explaining the parties' relationship and A.B.'s delayed outcry.

### 2. Davidson's Testimony

■ Prior to trial, defense counsel filed a "Motion to Exclude Defendant's Statement" seeking to exclude defendant's written statement made in connection with his plea agreement for the offense committed in Colorado. The trial court imposed a motion in limine regarding the statement

in order to conduct an evidentiary hearing to determine its admissibility. At trial, and outside of the jury's presence, Davidson testified about her interview with appellant during which he told her that he had had a sexual relationship with A.B. At the conclusion of the hearing, the State requested that Davidson's testimony be admitted under Rule 404(b) for the purpose of rebutting appellant's defensive theory that A.B. fabricated the allegations against appellant. Defense counsel argued that the testimony was inadmissible because its potential for unfair prejudice substantially outweighed its probative value. The court excluded appellant's written statement based on a lack of proper predicate but admitted Davidson's testimony, finding that its probative value outweighed its prejudicial effect.

Davidson testified that appellant had pleaded guilty to the offense of attempted sexual assault on a child by one in a position of trust. In exchange for his plea, the State recommended probation. In the course of preparing a pre-sentencing report, Davidson interviewed appellant regarding his relationship with A.B. Appellant admitted to Davidson that he had had a sexual relationship with A.B. and that he knew it was illegal. Davidson testified that appellant told her that he had been living with A.B. and her mother and that he and A.B. developed a relationship because they both felt mistreated by A.B.'s mother. Appellant told Davidson that although he and A.B. had initially turned to one another for comfort and friendship, their relationship became sexual and he fell in love with her.

Appellant contends that the trial court abused its discretion in admitting Davidson's testimony because its probative value was substantially outweighed by its potential for unfair prejudice in violation of Rule 403. Specifically, he argues that the State

did not connect appellant's admission to the charged offense and, thus, it lacked probative value for the Texas offense. Appellant asserts that even if we find the evidence relevant, the trial court erred in admitting it under Rule 403.

 Our system of justice recognizes that a defendant should be tried only for the charged offense and not for his criminal propensities, and thus, evidence of extraneous offenses is normally inadmissible. *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim.App.2003). However, Rule 404(b) allows evidence of other crimes, wrongs, or acts if the evidence has relevance apart from character conformity. *See* Tex.R. Evid. 404(b); *Moses*, 105 S.W.3d at 626. Otherwise inadmissible extraneous evidence may be admissible for other purposes including proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or accident. *See Moses*, 105 S.W.3d at 626; *Bargas v. State*, 252 S.W.3d 876, 890–91 (Tex.App.-Houston [14th Dist.] 2008, no pet. h.).

 Rebuttal of a defensive theory is also one of the permissible purposes for which relevant evidence may be admitted under Rule 404(b). *Moses*, 105 S.W.3d at 626. The Court of Criminal Appeals has held that extraneous offense evidence is admissible under Rule 404(b) to rebut a defensive theory raised in an opening statement or raised by the State's witnesses during cross-examination. *Ransom v. State*, 920 S.W.2d 288, 301 (Tex.Crim. App.1994) (op. on reh'g); *Bargas*, 252 S.W.3d at 890–91,. In sexual assault cases, extraneous offense evidence may be admitted under Rule 404(b) to rebut defensive theories of retaliation or that the defendant is an innocent victim of a "frame-up." *Wheeler v. State*, 67 S.W.3d 879, 887 n. 22 (Tex.Crim.App.2002) (involving defensive theory of conspiracy or frame-up motivated by greed or money); *Moses*, 105 S.W.3d

at 627 (involving a retaliation defensive theory); *Dennis v. State,* 178 S.W.3d 172, 178 (Tex.App.-Houston [1st Dist.] 2005, pet. ref'd) (involving frame-up defensive theory motivated by anger or revenge).

In his opening statement, defense counsel stated:

Comes a point when Mr. Isenhower says in effect, to Angela the mother, well, we are going to break it off. Why don't you and [A.B.] go your way and I will go mine and they break up in Colorado.... What we have here, gentlemen, I think is a bitter, vindictive older woman who decided that once her gravy train had dried up, that she was going to get some pay back and this is the way she is trying to get the pay back. The revenge on Mr. Isenhower. By making this charge that he had sex with the daughter.

Throughout his cross-examination of A.B., defense counsel sought to establish the defensive theory that A.B. and her mother told the police that appellant had had sex with A.B. in retaliation for the fact that he no longer supported them after appellant and A.B.'s mother ended their relationship. The record reflects that defense counsel repeatedly asked A.B. about the fact that she did not complain about appellant to anyone until she reported him to the authorities in Colorado.[8] In closing, defense counsel argued, "She didn't tell anybody. Didn't tell her mother, didn't tell anyone, no complaint. Nothing.... Include that same as oh, by the way, more than 5 years later."

■ A trial court does not abuse its discretion in admitting extraneous offense evidence to rebut a defensive theory of frame-up or retaliation. *See Moses,* 105 S.W.3d at 627; *Wheeler,* 67 S.W.3d at 887–

88; *Bargas,* 252 S.W.3d at 891–92; *Dennis,* 178 S.W.3d at 178. It is clear from his opening statements and cross-examination of A.B. that defense counsel raised the defensive theory of retaliation. Under *Moses* and *Wheeler,* the trial court did not abuse its discretion in determining that Davidson's testimony was relevant rebuttal evidence to show that A.B. was not motivated by retaliation in making the sexual assault allegations against appellant. *See Moses,* 105 S.W.3d at 627; *Wheeler,* 67 S.W.3d at 887–88.

■ However, as noted above, even if relevant evidence is offered and admissible under Rule 404(b), a trial court should nevertheless exclude it if its probative value is substantially outweighed by the danger of unfair prejudice. Tex.R. Evid. 403; *Moses,* 105 S.W.3d at 626. The trial court must conduct a Rule 403 balancing test to make this determination. *See Mozon v. State,* 991 S.W.2d 841, 847 (Tex.Crim.App. 1999); *Bargas,* 252 S.W.3d at 891–92.

The first of the factors—the strength of the evidence to make a fact of consequence more or less probable—weighs strongly in favor of admissibility. Davidson's testimony was probative to rebut the defensive theory that A.B. fabricated the allegations in retaliation for the fact that appellant no longer supported her and her mother after his relationship with her mother ended. The admission of this evidence makes it much less likely that A.B.'s allegations concerning the charged offense were the result of a retaliatory motive.

As to the second and third factors, although the evidence had the potential to impress the jury in an indelible way, any unfair prejudice is not outweighed by the

---

**8.** The record reflects that during his cross-examination of A.B., which is approximately thirty-six pages long, defense counsel asked her whether she reported appellant to anyone approximately twenty-seven times.

probative value of the evidence. *See Bargas,* 252 S.W.3d at 893–94; *Dennis,* 178 S.W.3d at 181. Further, our review of the record indicates that Davidson's testimony was neither lengthy nor graphic.

Finally, the strength of the State's need for the evidence to prove a fact of consequence was significant. A.B. did not tell anyone about her allegations until approximately five years after the offense at issue occurred. There was no physical evidence and no corroborating eyewitness testimony. Because appellant strongly contested A.B.'s allegations on a theory of retaliation, the State demonstrated its need to counter appellant's defensive theory with Davidson's testimony. Thus, this factor weights heavily in favor of admissibility.

In balancing the above factors, the trial court's decision to admit Davidson's testimony was within the zone of reasonable disagreement. As such, we hold that the trial court did not abuse its discretion under Rule 403 in admitting the extraneous offense evidence. We overrule appellant's fourth issue.

### III. CONCLUSION

Having overruled all of appellant's issues, we affirm the trial court's judgment.