02-09-239-CR











[A1] 


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-09-00239-CR

 

 


 
 
 Mohammed Reza
 
 
  
 
 
 APPELLANT
 
 
 
 
  
 V.
  
 
 
 
 
 The State of Texas
 
 
  
 
 
 STATE
 
 


 

 

----------

 

FROM THE 271st
District Court OF Wise COUNTY

----------

 

MEMORANDUM
OPINION[1]

----------

 

I.  Introduction

Appellant
Mohammed Reza appeals his conviction for aggravated sexual assault of a child. 
In two issues, Reza argues that the trial court erred by not requiring the
State, upon Reza’s request, to elect which of multiple acts it was relying on
for conviction and by not charging the jury with language giving effect to the
State’s insufficient election.  We will affirm.

II.  Factual and Procedural Background

          In
1995, Farzana and her husband Shaikh, moved from Bangladesh to the United
States; initially, they stayed in Texas with Shaikh’s sister Daisy and Daisy’s
husband Reza.  In June 1995, Farzana and Shaikh had a daughter, A.H., and in
1999, they moved to Canada.  A.H. and her parents kept in close contact with
Daisy and Reza, who remained in Texas.  A.H. often went on family vacations
with Daisy and Reza, she visited them every summer, and she even asked her
parents if she could refer to Reza, her uncle, as her dad.  When A.H. was eight
years old, Reza began sexually assaulting her; he would touch her “private
parts” when they were at his house alone.  A.H. did not tell anyone because
Reza told her not to.

          In
January 2006, when A.H. was ten, Farzana, A.H., and A.H.’s younger sister moved
to Texas so that Farzana could join Reza’s business of owning and operating
convenience stores.  Shaikh travelled back and forth between Canada and his
family in Texas.  Farzana and her daughters lived with Reza and Daisy in
Decatur for the first couple of months of 2006, and Reza continued touching
A.H. inappropriately during that time.

While
living with Reza and Daisy, Farzana noticed changes in A.H.; A.H. told her
mother that she did not want to live there and asked to sleep in her mother’s
bedroom instead of the guestroom.  After they moved out of the house, A.H. did
not want to go back to visit, and when she did, she did not want to go inside.  In
2006, Reza bought A.H. two sets of silky pajamas; both Daisy and Farzana thought
this was unusual because he had never bought clothes for his family.  When they
asked Reza why he had bought the pajamas, he explained that she comes over
wearing jeans and that she needs to be comfortable; he insisted that the pajamas
be left at his house.

          On
Thanksgiving 2006, when A.H. was eleven, Reza and Daisy had a party at their
house.  Farzana was not feeling well and decided to leave the party early.  Despite
A.H.’s request to go home with her mother, Farzana made A.H. stay at her aunt
and uncle’s house because Farzana did not want to hurt Daisy’s feelings.  A.H.
slept in Daisy’s bed, and Reza touched her again that night.  That weekend,
A.H. told her mother that Reza had been touching her “private parts” for months.
 About one week later, Farzana told Daisy what A.H. had told her, but Farzana never
called the police.  When Daisy confronted Reza, he apologized and asked her to
help A.H. “recover.”  Shortly thereafter, Reza visited Farzana; he told her that
he was sorry for what he had done and that it was “a sick thing to do,” and he
asked for her forgiveness.  Farzana and her family moved back to Canada one
week later, and Daisy filed for divorce.  Daisy ultimately reported Reza to the
authorities.

          Judy
Waldman, a sexual assault nurse examiner, examined A.H on January 24, 2007.  A.H.
told Waldman that she had woken up one night to find Reza in her room touching
her vaginal area inside her underwear.  When Waldman asked A.H. if Reza had
touched her with his penis, A.H. said she was not sure.  Waldman did not find
any injuries or trauma to A.H.’s female sexual organ, nor did she expect to
find any considering the nature of the contact described by A.H. and the length
of time that had passed since the incident.

          Reza
was charged by indictment with two counts of aggravated sexual assault of a
child.  The first count alleged that on or about January 6, 2006, Reza penetrated
A.H.’s sexual organ with his finger, and the second count alleged that on or
about November 23, 2006, Reza caused A.H.’s sexual organ to contact his sexual
organ.  The jury convicted Reza of the first count, acquitted him of the second
count, and assessed his punishment at fifteen years’ confinement and a $10,000
fine.  The trial court sentenced him accordingly.

III.  Election

          In
his first issue, Reza argues that the trial court erred by not requiring the
State to elect, upon defense counsel’s request, which act the State would rely
on for conviction of each count of sexual assault.

A.  Law
on Election

Generally,
when “one act of intercourse is alleged in the indictment and more than one act
of intercourse is shown by the evidence in a sexual assault trial, the State
must elect the act upon which it would rely for conviction.”  O’Neal v. State,
746 S.W.2d 769, 771 (Tex. Crim. App. 1988); see Phillips v. State, 193
S.W.3d 904, 909–10 (Tex. Crim. App. 2006).  In this context, an election is “some
action that excludes or limits the jury’s consideration of an offense.”  Ex
parte Goodbread, 967 S.W.2d 859, 861 n.2 (Tex. Crim. App. 1998).  Before
the State rests its case in chief, the trial court has discretion in directing
the State to make an election.  O’Neal, 746 S.W.2d at 771.  Once the
State rests, upon a timely request by the defendant, the trial court must order
the State to make an election, and failure to do so is error.  Phillips,
193 S.W.3d at 909.

The
election requirement forces the State to formally differentiate the specific
evidence upon which it will rely as proof of the charged offense from evidence
of other offenses or misconduct it offers only in an evidentiary capacity.  Id.
at 910.  This allows the trial judge to distinguish the evidence that the State
is relying on to prove the particular act charged in the indictment from the
evidence that the State has introduced for other relevant purposes, and the trial
court can instruct the jury on the proper use for each type of evidence.  Id.
(citing Tex. Code Crim. Proc. Ann. art. 38.37 (Vernon Supp. 2010)).  Moreover,
the election requirement protects fundamental rights such as notice and
unanimity, insuring that the defendant is aware of precisely which act he must
defend himself against and that the jurors know which act they must all agree
he is guilty of in order to convict him.  Id.

B. 
State’s Election was Sufficient

Here,
Reza was charged with two offenses, sexual assault by digital penetration alleged
to have occurred on or about January 6, 2006, and sexual assault by causing
A.H.’s sexual organ to contact his sexual organ alleged to have occurred on or
about November 23, 2006.  Evidence at trial revealed a continuing course of
sexual contact between Reza and A.H., beginning when A.H. was eight years old
and continuing until sometime around Thanksgiving 2006, when A.H. was eleven.

A.H.,
who was fourteen years old at the time of Reza’s trial, testified that Reza
began touching her inappropriately when she was eight years old and that it
usually happened at Reza’s house at night when they were at home alone.  A.H.
testified that in early 2006—when she was ten years old—her family moved from
Canada into Daisy and Reza’s house in Decatur.  According to A.H., Reza would
go into the room where she slept while everyone else was sleeping and would
touch her, both over and under her clothes.  He would also go into Daisy’s
bedroom when A.H. was in there watching TV alone and touch her inappropriately.
 A.H. explained that Reza would put his hands down her pants, that he would
touch her “wiggly part” (which A.H. testified was her clitoris), and that it
would hurt.  She recalled that Reza had put cream on his finger several times.  A.H.
testified that Reza had taken off his pants and her pants, had lain beside her
on the bed, and had pressed his penis to her “private part.”  She said that she
had felt “[w]etness” on the bed and on her body.  A.H. testified that Reza had bought
her loose-fitting pajamas because he did not like that her jeans were too tight
to take off.  After she and her family moved out of Reza and Daisy’s house, A.H.
would stay over there, sometimes sleeping in the same bed with Daisy and Reza,
and Reza would touch A.H. while his wife was sleeping in the same bed.  According
to A.H., the last time Reza ever did anything to her was after the party on
Thanksgiving 2006.  A.H. slept over in Daisy’s bed that night, and Reza touched
her with his hand while she was sleeping.  Afterwards, A.H. told her mom what
had happened.

At
the close of all the evidence, defense counsel requested that the trial court
order the State to elect which conduct they were proceeding on for conviction
of both offenses alleged in the indictment.[2]  The trial court
requested a response from the State, and the following exchange occurred,

[The State]:  Your
Honor, we can elect, based on [A.H.]’s testimony, the first time the Defendant
put cream on his finger, put his finger down her pants, penetrated her sexual
organ.  We can allege – 

          

We can elect the
first time that he ever laid her on her side, spooned up behind her and put his
penis between her legs, making contact with her sexual organ.  So we’ll elect
the first time that he did either of those.

 

THE COURT:  Okay.

 

[Defense Counsel]: 
There’s no – There’s no allegation.  There’s no context that that’s done before
the presentment of the date of the indictment, which is August 29, 2007.

          

And I would submit
that’s insufficient, but I understand what they said.

 

THE COURT:  All
right.

 

We
hold that the State’s response was adequate to elect the acts upon which it
would rely for conviction.  That is, the State’s response sufficiently informed
the trial court and defense counsel that it was electing to rely on the first
time Reza put cream on his finger, put his finger down A.H.’s pants, and
penetrated her sexual organ for conviction of the offense alleged in count one
of the indictment—sexual assault by digital penetration.  And the State’s
response also sufficiently informed the trial court and defense counsel that it
was electing to rely on the first time Reza “ever laid [A.H.] on her side,
spooned up behind her and put his penis between her legs, making contact with
her sexual organ” for conviction of the offense alleged in count two of the
indictment—sexual assault by causing A.H.’s female sexual organ to contact his
sexual organ.  See id. at 909–10; O’Neal, 746 S.W.2d at
771; Smith v. State, Nos. 02-08-00394-CR, 02-08-00395-CR, 2010 WL
3377797, at *10 (Tex. App.—Fort Worth Aug. 27, 2010, no pet.) (not designated
for publication) (holding State’s “general” elections were adequate “because
the complainants’ testimony regarding the offenses was general”); see also
Isenhower v. State, 261 S.W.3d 168, 173–75 (Tex. App.—Houston [14th Dist.]
2008, no pet.) (analyzing jury charge error based on State’s proper election “to
seek conviction based upon the first act of sexual intercourse that occurred
when A.B. was fourteen years old”).  Consequently, we overrule Reza’s first
issue.

IV.  Jury Charge

In
his second issue, Reza argues that the trial court erred by failing to instruct
the jury regarding the State’s election.  The State concedes charge error, but
it disputes that Reza was harmed.  Accordingly, we will review whether Reza was
harmed by the trial court’s failure to include in the jury charge an
instruction that the jury was to consider only the elected acts in deciding
Reza’s guilt and that limited the jury’s consideration of extraneous sexual
offenses to the purpose of determining the relationship between Reza and A.H.
or their states of mind.  See Tex. Code Crim. Proc. Ann. art. 38.37, § 2
(permitting admission of evidence of extraneous sexual offenses between
defendant and child-victim for its bearing on their states of mind and previous
and subsequent relationship); Dixon v. State, 201 S.W.3d 731, 734–36
(Tex. Crim. App. 2006); Rivera v. State, 233 S.W.3d 403, 406 (Tex. App.—Waco
2007, pet. ref’d) (explaining that, when State makes election, defendant is
entitled to jury instruction to consider only elected act in deciding guilt and
limiting jury’s consideration of all other unelected acts to purposes for which
they were admitted).

A.  Standard
of Review

1. 
The Parties’ Arguments

The
parties dispute the applicable standard of review.  Relying on the court of
criminal appeals’s opinion in Phillips, Reza argues that the trial
court’s failure to inform the jury of the State’s election implicated his right
to a unanimous verdict and placed him in the same position as if no election
had been made; consequently, Reza submits that the error is constitutional and that
harm is analyzed under rule of appellate procedure 44.2(a).  See Phillips,
193 S.W.3d at 913–14 (holding that failure to require State to elect upon
timely request jeopardizes defendant’s right to a unanimous jury verdict and is
constitutional error); see also Tex. R. App. P. 44.2(a) (requiring
reversal for constitutional error unless appellate court determines beyond a
reasonable doubt that the error did not contribute to the conviction or
punishment); Duffey v. State, 326 S.W.3d 627, 630–31 (Tex. App.—Dallas
2009, no pet.) (applying Phillips’s harm analysis to election-charge
error because error “placed [defendant] in the same position as if no election
had been ordered or made”).  The State, on the other hand, argues that the error
is a charge error and that, because Reza failed to object, the egregious harm
standard applicable to unobjected-to charge error applies.  See Tex. Code
Crim. Proc. Ann. art. 36.19 (Vernon 2006); Allen v. State, 253 S.W.3d
260, 264 (Tex. Crim. App. 2008); Hutch v. State, 922 S.W.2d 166, 171
(Tex. Crim. App. 1996); Almanza v. State, 686 S.W.2d 157, 171 (Tex.
Crim. App. 1985) (op. on reh’g).  The State further contends that this court
and other appellate courts have rejected application of the constitutional harm
analysis to election-charge errors.  See Smith, 2010 WL 3377797,
at *11–15; see also Isenhower, 261 S.W.3d at 175–77.

2.  Phillips v.
State:  Harm Analysis Applicable to

Failure to Require
State to Elect

 

In Phillips,
the court of criminal appeals held that when a trial court fails to require the
State to elect which transaction it intends to rely upon for conviction after
the defendant timely requests such an election—whether the defendant makes his
request after the State rests or after the close of all the evidence—the trial
court commits constitutional error.  See 193 S.W.3d at 912–13.  The
court explained that when multiple incidents are presented to the jury and the
State is not required to elect, “[s]ix jurors could convict on the basis of one
incident and six could convict on another (or others).”  Id. at 913.  The
court held,

Consideration of
these incidents without an election jeopardizes the defendant’s right to a
unanimous jury verdict as guaranteed by the Texas Constitution, even though the
extraneous incidents may be admissible for other purposes under Article 38.37
of the Code of Criminal Procedure. When the Texas Constitution is violated, as
it was in the case before us, the proper analysis is provided by Rule of
Appellate Procedure 44.2(a).

 

In addition to
protecting the unanimity of the jury verdict, an election is also required in
order to provide adequate notice and an opportunity to defend. The deprivation
of notice also implicates of fundamental constitutional principles, viz:
due process and due course of law.

 

Id. at
913–14 (footnotes omitted).

In Dixon,
the court of criminal appeals reaffirmed its holding in Phillips and
considered the following four main purposes underlying the election rule to
determine whether the appellant had been harmed with regard to the failure to
elect: (1) the appellant’s need to be protected from the admission of
extraneous offenses; (2) the risk that the jury found the appellant guilty of
the charged offense not because they were proven beyond a reasonable doubt but
because of the admission of the extraneous offenses; (3) the risk of a
nonunanimous verdict; and (4) whether the admission of the extraneous offenses
deprived the appellant of adequate notice regarding which offense to defend
against.  Dixon, 201 S.W.3d at 734–36.

3.  Harm
Analysis Applicable to Election-Charge Error

Both
Phillips and Dixon address harm when the State fails to elect
upon request; they do not deal with a harm analysis when the State makes an
election, yet the trial court fails to include in its jury charge an
instruction regarding the State’s election.  It appears that there is a split
among the courts of appeals as to the applicable standard of review when faced
with the latter situation.

In Duffey,
the Dallas Court of Appeals analyzed an unpreserved charge error based on the trial
court’s failure to instruct the jury on the State’s election.  326 S.W.3d at
631.  The court of appeals rejected the State’s position that “the error [was]
mere charge error” and instead held that Phillips’s constitutional harm
analysis applied because the error “placed [the defendant] in the same position
as if no election had been ordered or made.”  Id.; see also Demps v.
State, 278 S.W.3d 62, 68–69 (Tex. App.—Amarillo 2009, pet. ref’d)
(applying rule 44.2(a) to trial court’s failure to include instruction
requiring unanimity as to one distinct offense and holding that error did not contribute
to conviction).

On
the other hand, the Houston Fourteenth Court of Appeals has refused to apply the
constitutional harm analysis to election-charge error.  See Isenhower,
261 S.W.3d at 176.  In Isenhower, the trial court granted the
defendant’s request for an election but failed to include an instruction in the
jury charge; in addressing harm, the court of appeals distinguished Phillips
because that case deals with election error, whereas Isenhower was complaining
of charge error.  See id. at 175.[3]  Because Isenhower failed
to object to the charge error, the appellate court applied the egregious harm
standard of review.  Id.

In
our unpublished opinion in Smith, the parties raised the same arguments
regarding the applicable standard of review as they do here.  2010 WL 3377797,
at *2.  Rejecting the appellant’s contention that the constitutional harm
standard of review should apply, in Smith we instead conducted a harm
analysis under Almanza’s “some harm” standard of review applicable to preserved
jury-charge errors.  Id. at *2­, 11–15; see also Pope v. State,
Nos. 02-08-00235-CR, 02-08-00236-CR, 02-08-00237-CR, 2009 WL 3416459, at *12–13
(Tex. App.—Fort Worth Mar. 3, 2010, pet. ref’d) (mem. op., not designated for
publication) (applying “some harm” standard to trial court’s error in failing
to instruct jury on State’s election after defendant timely objected to jury
charge).  In our harm analysis in Smith, we analyzed any possible harm in
light of Phillips’s four purposes of the election requirement and held
that the trial court’s failure to instruct the jury on the State’s election did
not harm the appellant regarding all but one count.  See Smith, 2010 WL
3377797, at *11–15.[4]

Today,
we reaffirm our holding in Smith, and we disagree with Duffey. 
As the State points out on appeal, “Texas courts have not approached jury
charge issues solely from the perspective of . . . whether or not a
constitutional right was involved, even when addressing charge issues that
potentially implicate jury unanimity.”  See Ngo v. State, 175 S.W.3d
738, 748–49 (Tex. Crim. App. 2005) (applying egregious harm standard to
erroneous jury charge that permitted non-unanimous verdict when defendant
failed to object to charge).  Because Reza did not object to the trial court’s
failure to include in the jury charge an instruction regarding the State’s
election, we must decide whether the error was so egregious and created such
harm that Reza was deprived of a fair and impartial trial—in short, that Aegregious
harm@ has
occurred.  See Tex. Code Crim. Proc. Ann. art. 36.19; Allen, 253
S.W.3d at 264; Hutch, 922 S.W.2d at 171; Almanza, 686 S.W.2d at
171; see also Barrios v. State, 283 S.W.3d 348, 350 (Tex. Crim. App.
2009) (“A claim of jury-charge error is reviewed using the procedure set out in
Almanza . . . .”).  As we did in Smith,
we will analyze any potential harm in light of the four purposes of the
election requirement.  See Smith, 2010 WL 3377797, at *11–12; see
also Phillips, 193 S.W.3d at 910.

B. 
Harmless Error

The
jury acquitted Reza of the second count alleged in the indictment—sexual
assault of A.H. by causing A.H.’s sexual organ to contact his sexual organ;
consequently, we will address harm only as it relates to his conviction for the
first count alleged in the indictment—sexual assault of A.H. by digital
penetration.  See, e.g., Rivas v. State, 787 S.W.2d 229,
231 (Tex. App.—Corpus Christi 1990, pet. denied) (holding that appellant failed
to show that trial court’s failure to quash two counts in indictment harmed him
when jury did not convict him of either alleged offense).

1.  Protection
from Extraneous Offenses

Regarding
the first purpose of the election rule—Reza’s need to be protected from the
admission of extraneous offenses—article 38.37 permits evidence of other
extraneous sexual acts committed by him on A.H. to show the relationship
between them and their states of mind.  See Tex. Code Crim. Proc. Ann. art.
38.37, § 2.  Consequently, Reza was not entitled to protection from the
evidence of extraneous offenses involving A.H.  See Dixon, 201 S.W.3d at
734; Phillips, 193 S.W.3d at 909–10.

2.
Risk of Conviction Based on Extraneous Offenses

Regarding
the second purpose of the election rule—the risk that the jury found Reza guilty
of the sexual-assault-by-digital-penetration offense not because it was proven
beyond a reasonable doubt but because of the admission of the extraneous
offenses—the multiple acts of sexual assault were all recounted by the same
person, A.H.  Thus, “[t]his case is not concerned with evidence of different
activities from different sources that a jury might perceive to ‘add up’ to the
defendant being guilty even though no individual offense was proven beyond a
reasonable doubt.”  Dixon, 201 S.W.3d at 735.

And
as we explained in Smith, in cases involving “complainant testimony of a
continuing course of the same type of nonspecific, indistinguishable conduct
over a long time period, the issue is typically whether the jury believes the
complainant generally or not at all.”  2010 WL 3377797, at *13.  A.H. was general
in her description of the assaults; she did not separately detail each time
Reza touched her and she did not give specific dates, other than to testify
that the last time Reza touched her was after a party at his house on Thanksgiving
2006.  A.H. testified generally that Reza first touched her when she was eight
years old, that it usually happened at his home while they were alone at night,
and that Reza continued to touch her when she moved into his and Daisy’s house
in 2006.  According to A.H., Reza would stick his hand down her pants and touch
her “wiggly part”; sometimes he would put cream on his fingers; sometimes it happened
in Daisy’s room while A.H. was watching TV; and sometimes it happened at night
while A.H. was sleeping on the futon in the living room.

The
indictment alleged that the digital penetration offense occurred on or about
January 6, 2006, which was around the time that A.H. and her family moved into
Reza and Daisy’s home.[5]  A.H.’s testimony was
corroborated by her mother, Farzana, who testified that A.H. began acting
differently and did not want to live at Reza’s house when they moved to Texas;
that when they moved out A.H. did not want to go inside Reza’s house; and that
A.H. ultimately told her what Reza had done.

There
is little, if any, risk that the jury convicted Reza based solely on the
extraneous offenses.  That is, if the jury believed that A.H.’s testimony about
Reza digitally penetrating her female sexual organ on several occasions was
credible as to one of those occasions, then the jury likewise must have
believed that her testimony was credible as to all of them.  See Dixon,
201 S.W.3d at 735; Smith, 2010 WL 3377797, at *12.

3. 
Risk of Nonunanimous Verdict

Regarding
the third reason for the election rule—the risk of a nonunanimous verdict—there
is no question that the jurors unanimously agreed that Reza intentionally or
knowingly penetrated A.H.’s sexual organ with his finger on at least one
occasion.  See Dixon, 201 S.W.3d at 735 n.23 (“Clearly, however, the
jurors unanimously agreed that appellant committed at least one sexual assault
. . . described by the complainant.”).  The issue is whether each and every
juror agreed that Reza committed the same, single, specific criminal act.  See
Ngo, 175 S.W.3d at 745.

The trial
court’s charge instructed the jury to consider testimony about Reza’s
extraneous offenses only in determining his and A.H.’s states of mind and their
previous and subsequent relationship, if any.  See Tex. Code Crim. Proc.
Ann. art. 38.37, §§ 1(1), 2.  The charge did not, however, instruct the jury as
to which acts it was to consider in determining the guilt-innocence inquiry and
as to which offenses were merely extraneous.  And although the charge instructed
the jury that their verdict must be by unanimous vote of all jury members, it did
not inform the jury that they had to unanimously agree on a specific act in
order to convict on each count.

As
we explained above, A.H.’s testimony was general in nature; she did not explain
any one incident in more detail than another but instead testified as to the
time frame during which Reza sexually assaulted her, beginning when she was
eight years old and ending around Thanksgiving 2006, and she related the sequence
of events that occurred during those assaults—Reza touched her over her clothes
and on her skin, sometimes he used cream, and it hurt.  All of the assaults
happened in Reza’s house, usually at night either in his bedroom or in the
living room where A.H. sometimes slept.

This
is not a case in which the complainant described multiple specific incidents
such that some jurors could have relied on one specific incident and other
jurors could have relied on another specific incident.  See, e.g., Farr
v. State, 140 S.W.3d 895, 900–01 (Tex. App.—Houston [14th Dist.] 2004) (“[T]he
offense of oral sex was described in detail more than once, potentially
allowing the jury to convict because some of the jurors relied upon one
incident and others relied upon another.”), aff’d sub nom. by Phillips,
193 S.W.3d at 904; Phillips v. State, 130 S.W.3d 343, 353–54 (Tex. App.—Houston
[14th Dist.] 2004) (op. on reh’g) (holding election error was harmful because
complainant testified about two specific occurrences of sexual assault), aff’d,
193 S.W.3d at 904.  This is also not a case in which the complainant’s
testimony was so general in nature that it did not allege individual
incidents.  See, e.g., Farr, 140 S.W.3d at 901 (holding testimony
that defendant digitally penetrated complainant “every chance he got” was so
general that court could not be certain that trial court’s failure to require
State to elect did not contribute to conviction).

The
facts of this case are more analogous to those in Dixon, where the
complainant described the manner in which the appellant sexually assaulted her
and said that it occurred numerous times—“all of the incidents presented
in the case were presented with equal specificity, and, except for the fact
that one incident occurred during the day, none of the incidents were
distinguished in any manner from each other.”  201 S.W.3d at 734.  Reasoning
that there was simply no basis in the record for the jury to believe that one
incident occurred during the day but that none occurred at night, the court of
criminal appeals perceived no risk of a non-unanimous verdict.  Id. at
735 & n.23; see also Hulsey v. State, 211 S.W.3d 853, 856 (Tex.
App.—Waco 2006, no pet.) (following Dixon and holding that trial court’s
error in failing to require State to elect was harmless when testimony showed
that defendant touched complainant’s breasts and genitals every morning that he
could when complainant’s mother was at work).

Likewise,
here, we perceive little to no risk that any juror would have believed that
A.H.’s testimony as to the incidents of digital penetration was credible as to
one incident but not as to another.  See Dixon, 201 S.W.3d at 735.

4. 
Notice

Regarding
the fourth purpose of the election requirement—whether Reza was deprived of
adequate notice regarding which offense to defend against—Reza’s defense
counsel did not request an election before presenting his defense.  By not
seeking an election until after the close of all the evidence, he was not
entitled to an election at the close of the State’s evidence.  See Phillips,
193 S.W.3d at 912.  And when he did request an election, he received adequate
notice of the State’s election, as we explained in part III of our opinion.  In
fact, when the State made its election, defense counsel responded that he “underst[oo]d
what they [the State] said.”  Furthermore, defense counsel never indicated that
Reza’s defense was adversely affected by not receiving notice of the State’s
election until after the close of all the evidence.  For these reasons, the notice
concerns do not weigh in favor of finding harm.  See Duffey, 326 S.W.3d
at 634 (holding due process concerns not implicated when defendant received
timely notice of State’s election upon request and when counsel expressly
acknowledged understanding the election and did not indicate that defense was
adversely affected).

5. 
Factors Weigh Against Finding Harm

          Having
considered the harm to Reza in light of the four main purposes underlying the
election rule, we hold that the trial court’s error in failing to instruct the
jury regarding the State’s election was not so egregious and did not create
such harm as to deny Reza a fair and impartial trial.  See Almanza,
686 S.W.2d at 171; see also Dixon, 201 S.W.3d at 734–36; Phillips,
193 S.W.3d at 913–14; see generally Hutch, 922 S.W.2d at 172–74. 
Consequently, we overrule Reza’s second issue.

V.  Conclusion

Having
overruled Reza’s two issues, we affirm the trial court’s judgment.

 

 

 

 

SUE WALKER
JUSTICE

 

PANEL:  GARDNER, WALKER, and GABRIEL, JJ.

 

PUBLISH

 

DELIVERED:
March 17, 2011









[1]See Tex. R. App. P. 47.4.





[2]Reza argues that he
preserved his request for an election at the close of the State’s
case-in-chief, but our review of the record shows that Reza moved only for a
directed verdict at that time.  The trial court deferred hearing his motion
until the next break, and after the defense rested, the trial court took a
break and heard Reza’s motion for directed verdict.  It was not until that
point that Reza requested the trial court to order the State to elect. 
Consequently, Reza was not entitled to an election at the close of the State’s
case.  See Phillips, 193 S.W.3d at 912.  He was, however, still entitled
to a unanimous verdict, and he preserved that right by requesting an order
requiring the State to elect at the close of all the evidence.  See id. 





[3]In Isenhower,
at least twice prior to the introduction of certain evidence, the trial court
gave the jury a limiting instruction to consider testimony regarding extraneous
acts for the limited purpose of determining the previous relationship between
the appellant and the complainant.  261 S.W.3d at 176.  Thus, the jury was made
aware of the State’s election, of which incident was the charged offense, and
of which incidents were extraneous acts.  Id.  In Duffey,
however, like here, the jury was never notified of the State’s election.  326
S.W.3d at 631.  The Dallas Court of Appeals in Duffey emphasized this
fact in distinguishing Isenhower, but it ultimately concluded that the
presence or absence of the jury during the State’s election did not affect the
trial court’s failure to properly instruct the jury on the legal effect of the
State’s election.  Id. at 631–32.





[4]We further explained, “Even
if we were to apply the constitutional harm standard applied in Duffey,
we would conclude and hold that the error was harmless beyond a reasonable
doubt as to those counts.”  Id. at *14 n.13 (citing Tex. R. App. P.
44.2(a)).





[5]Although the indictment included
a specific date on which the offense was alleged to have occurred, the jury was
instructed that the State was not required to prove the exact date alleged in
the indictment but was also allowed to prove that the offense was committed any
time prior to the presentment of the indictment.













 [A1]Opinion
by Justice Walker issued 3-17-2011 as NFP.  Ordered PUBLISHED 

4-14-2011.