COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
 2-07-174-CR

 

 

PHRORY MORAN GAMBLE                                                    APPELLANT

 

                                                   V.

 

THE STATE OF TEXAS                                                                STATE

 

                                              ------------

 

           FROM THE 396TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                             MEMORANDUM OPINION[1] ON

                 PETITION FOR
DISCRETIONARY REVIEW

 

                                              ------------

After reviewing Appellant=s
petition for discretionary review, we withdraw our November 26, 2008, opinion
and judgment and substitute the following.

                                            Introduction








Appellant appeals his conviction and life
sentence for aggravated sexual assault of a child under fourteen years of
age.  In two points, Appellant argues
that the trial court abused its discretion by admitting evidence of extraneous
offenses Appellant committed against the sexual assault complainant, M.L., and
M.L.=s
mother, Christine.  We affirm.

                             Factual
and Procedural Background

A grand jury indicted Appellant for aggravated
sexual assault of a minor.  Appellant
pleaded Anot
guilty,@ and the
case was tried to a jury.

M.L. was born in 1995, and he was eleven years
old at the time of trial.  His mother,
Christine, testified that she met Appellant at work in 1998 and that they
developed a romantic relationship while living together as roommates.  Christine and Appellant had two children
together, Z.H. in 1999 and K.H. in 2002. 
Christine testified that her relationship with Appellant was imperfect
and that he eventually became physically abusive.

Christine testified that she moved to Boston with
the children to get away from Appellant, but Appellant followed them to Boston
two months later.  She said that while
they were living in Boston, M.L.=s
teacher made a physical-abuse referral to Child Protective Services (ACPS@).  Christine testified that CPS investigated and
concluded that Appellant had physically abused M.L.  Christine said that after living in Boston
for about a year, she, Appellant, and the children moved to Arkansas, where
Appellant=s family lived.  She later left Appellant and returned to
Texas with the children.








Christine testified that when M.L. was almost
ten, she and M.L were watching a television news program about a man who said he
had been molested.  She said that M.L.
then told her that Appellant had blindfolded him, taken him to the bathroom,
told him he was going to give him some candy, instructed him to open his mouth,
and put Appellant=s penis into M.L.=s
mouth.  She testified that M.L. said that
he did not tell her sooner because he was scared Appellant would kill him if he
told anyone.  Christine reported M.L.=s outcry
to Irving police, whose investigation ultimately led to this case.

M.L. testified that when he was three years old
and lived in Texas (he could not remember what city) with Christine and
Appellant, Appellant would sometimes watch him when Christine was at work.  He testified that Appellant would play Athe
ninja game,@ in which Appellant would put a
plastic grocery bag over M.L.=s head
and prevent M.L. from breathing.  He said
that if he got dizzy and fell down, Appellant would tie the bag shut at M.L.=s
neck.  M.L. said they played the ninja
game Aa lot.@

M.L. also testified that Appellant would
sometimes choke him with one or both hands. 
He testified that Appellant told M.L. he would kill him if he told
Christine about the ninja game.  M.L.
recounted the following incident, which he said happened in Boston around the
time his teacher called CPS:








He had put the plastic
bag over my head, but this time for some reason he left a hole in there so I
could breathe.  And then I took advantage
and opened it.  And then he put another
one over my head and this time I bit through it and then opened it.  And then he put another one over my head and
I bit through that one and opened it. 
And then he took all of them and shoved them in my mouth and took me in
the kitchen and had me on the counter and screamed I wasChe was going to kill me. 

 

He said that on another occasion, Appellant pushed his head down onto
a coffee table, leaving a permanent scar; the State, without objection,
exhibited the scar to the jury.

M.L. said that on yet another occasion, Appellant
became angry when M.L. would not eat a peanut butter sandwich.  He testified that Appellant tied a belt
around M.L.=s throat, hung him in a closet
by the belt, and knocked on the door while Ascream[ing]
the scary movie guy=s name.@[2]








Finally, M.L. testified about the alleged sexual
assault.  He said that Appellant told
M.L. that Appellant had some candy in the bathroom, took him into the bathroom,
told him to close his eyes, and put his Aprivate@ into
M.L.=s
mouth.  He said there was candy on
Appellant=s private.  M.L. testified that he knew it was Appellant=s
private because he heard him Azipping
. . . back up.@ 
He said he did not remember having previously said that Appellant had
blindfolded him.  He said he told
Christine about this incident when he was nine and that he did not tell her
sooner because he was afraid Appellant would kill him.

Dr. Jayme Coffman, medical director of a CARE
team at Cook Children=s Medical Center, testified that
she had examined M.L.=s medical records, and she read
to the jury notes from an interview M.L. gave to members of another CARE
team.  According to the notes, M.L. told
the interviewer that Appellant had hung M.L. by his neck in a closet, tied
plastic bags over M.L.=s head, and put his private in
M.L.=s
mouth.  Dr. Coffman characterized the
physical abuse described by M.L. as Aserious
and sadistic.@ 
She testified that abuse can be a form of control over children, and
when asked whether physical dominance and sexual abuse Akind of go
together,@ she answered,

[A]ny time you have
domestic violence, you=re more likely to see
physical abuse and/or sexual abuse.  Any
time you see physical abuse, you=re more likely to seeBI mean see domestic
violence and/or sexual abuse.  All three
things are more common when you see any one.

 

Carolyn Kincaid, a Dallas CPS investigator,
testified that she interviewed M.L. in June 2005.  Kincaid said that M.L. told her that when he
was about three, Appellant would choke him with his hands, tie grocery bags
over his head, hang him by a belt in the closet, and, on one occasion, put his
penis in M.L.=s mouth after telling M.L. that
he was going to give him a piece of candy. 








The jury convicted Appellant of aggravated sexual
assault, and the trial court sentenced him to life in prison.  

Discussion

1.     Extraneous offense evidence related to M.L.

In his first point, Appellant argues that the
trial court abused its discretion by admitting evidence concerning the
extraneous offenses against M.L., specifically, the Aninja
game,@ the
choking and belt-hanging incidents, and the injury to M.L.=s
head.  At a pretrial hearing regarding
the admissibility of that evidence, the trial court heard testimony from M.L.
about the extraneous offenses.  Appellant
objected to the extraneous offense evidence as irrelevant, unrelated to the
charged sexual assault, and unfairly prejudicial.  The trial court ruled that it would admit the
evidence under code of criminal procedure article 38.37, section 2.[3]  








We review a trial court=s
evidentiary rulings for an abuse of discretion.  Weatherred v. State , 15 S.W.3d 540, 542
(Tex. Crim. App. 2000); Montgomery v. State, 810 S.W.2d 372, 391 (Tex.
Crim. App. 1991) (op. on reh=g).  A trial court abuses its discretion only when
the decision lies outside the zone of reasonable disagreement.  Green v. State, 934 S.W.2d 92, 101B02 (Tex.
Crim. App. 1996).  When determining
whether a trial court=s evidentiary ruling was an
abuse of discretion, we review the ruling in light of the evidence that was
before the court at the time of its ruling. 
Rangel v. State, 250 S.W.3d 96, 97B98 (Tex.
Crim. App. 2008); Hoyos v. State, 982 S.W.2d 419, 422 (Tex. Crim. App.
1998); see Cantu v. State, No. 01‑08‑00263‑CR, 2008 WL
4890035, at *6 (Tex. App.CHouston [1st Dist.] Nov. 13,
2008, no pet.) (mem. op., not designated for publication) (applying
time-of-ruling standard to admission of extraneous evidence).

a.      Article 38.37

Code of criminal procedure article 38.37,
section 2 provides,

Notwithstanding Rules 404
and 405, Texas Rules of Evidence, evidence of other crimes, wrongs, or acts
committed by the defendant against the child who is the victim of the alleged
[physical or sexual assault] shall be admitted for its bearing on relevant matters,
including:

 

 

 








(1) the state of mind of the defendant and the child; and

 

(2) the previous and
subsequent relationship between the defendant and the child.

 

Tex. Code Crim. Proc. Ann. art. 38.37 ' 2
(Vernon Supp. 2008).  Thus, article 38.37
is an exception to rule 404(b)=s
prohibition on the admission of character-conformity extraneous offense
evidence.  See id.; Tex. R. Evid.
404(b).  The State, as the
proponent of extraneous offense evidence, bears the burden of showing
admissibility of the evidence under article 38.37.  See Rankin v. State, 974 S.W.2d 707, 718
(Tex. Crim. App. 1998) (op. on reh=g).








Evidence of an extraneous offense is relevant to
explain why a victim of sexual assault did not make a prompt outcry.  Brown v. State, 657 S.W.2d 117, 119
(Tex. Crim. App. 1983) (holding sexual assault victim=s
testimony that appellant threatened to kill her family was admissible to show
reason for delayed outcry); Isenhower v. State, 261 S.W.3d 168, 179
(Tex. App.CHouston [14th Dist.] 2008, no
pet.); Walker v. State, 4 S.W.3d 98, 103 (Tex. App.CWaco
1999, pet. ref=d) (holding evidence that
defendant subjected complainant to numerous sexual and physical assaults
relevant under article 38.37 to show reason for delayed outcry).  It is also relevant to show the reason for a
complainant=s acquiescence to sexual assault
and a defendant=s dominance over the
complainant.  McCulloch v. State,
39 S.W.3d 678, 681 (Tex. App.CBeaumont
2001, pet. ref=d) (holding evidence that
defendant committed extraneous acts of sexual assault against complainant when
pretending to discipline her relevant under 38.37 to show complainant=s and
defendant=s state of mind, victim=s fear
and compelled acquiescence, defendant=s intent
and ability to commit crime, and defendant=s misuse
of his position of authority as family disciplinarian to commit crime).  

In this case, evidence of Appellant=s
physically abusing M.L. was relevant to show the relationship between Appellant
and M.L. before and after the alleged sexual assault under article 38.37.  See Tex. Code Crim. Proc. Ann. art.
38.37 ' 2.  Appellant=s
threats to kill M.L. were admissible to explain why M.L. waited six years
before making his outcry to Christine.  See
Brown, 657 S.W.2d at 119; Isenhower, 261 S.W.3d at 179.  The physical abuse evidence also demonstrated
Appellant=s dominance over M.L.  See McCulloch, 39 S.W.3d at 681.  We therefore hold that the trial court did
not abuse its discretion by ruling that the extraneous offense evidence was
relevant under article 38.37.

b.     Rule 403 Balancing Test 








Evidence relevant under article 38.37 must
nevertheless be excluded if the probative value of the evidence is
substantially outweighed by the danger of unfair prejudice.  Tex. R. Evid. 403; Mozon v. State, 991
S.W.2d  841, 847 (Tex. Crim. App.
1999).  A[I]n
prosecutions for sexual offenses against children, >extraneous
acts between the complainant and the defendant are usually more probative than
prejudicial.=@  Poole v. State, 974 S.W.2d 892,
898 (Tex. App.CAustin 1998, pet. ref=d)
(quoting Boutwell v. State, 719 S.W.2d 164, 178 (Tex. Crim. App.
1985)).  Rule 403 provides, AAlthough
relevant, evidence may be excluded if its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or
misleading the jury, or by considerations of undue delay, or needless
presentation of cumulative evidence.@  Tex. R. Evid. 403.  AProbative
value@ refers
to the inherent probative force of an item of evidenceCthat is,
how strongly it serves to make more or less probable the existence of a fact of
consequence to the litigationCcoupled
with the proponent=s need for that item of
evidence.  Gigliobianco v. State,
210 S.W.3d 637, 641 (Tex. Crim. App. 2006). 
AUnfair
prejudice@ refers to a tendency to suggest
a decision on an improper basis, commonly, though not necessarily, an emotional
one.  Id.  Only Aunfair@
prejudice provides the basis for exclusion of relevant evidence.  Montgomery, 810 S.W.2d at 389.  AConfusion
of the issues@ refers to a tendency to confuse
or distract the jury from the main issues in the case.  Gigliobianco, 210 S.W.3d at 641.  AMisleading
the jury@ refers
to a tendency of an item of evidence to be given undue weight by the jury on
other than emotional grounds.  Id.  








When a defendant makes a rule 403 objection, the
trial court has a nondiscretionary obligation to weigh the probative value of
the evidence against the unfair prejudice of its admission.  Montgomery, 810 S.W.2d at
389.  By overruling such an objection,
the trial court is assumed to have applied a rule 403 balancing test and
determined the evidence was admissible.  See
Poole, 974 S.W.2d at 897; Yates v. State, 941 S.W.2d 357, 367 (Tex.
App.CWaco
1997, pet. ref=d); Caballero v. State,
919 S.W.2d 919, 922 (Tex. App.CHouston
[14th Dist.] 1996, pet. ref=d).  

The trial court has wide latitude to admit or
exclude evidence of extraneous offenses. 
Montgomery, 810 S.W.2d at 390; 
Poole, 974 S.W.2d at 897. 
A reviewing court must therefore recognize that the trial court is in a
superior position to gauge the impact of the relevant evidence and not reverse
a trial court=s ruling if it is within the Azone of
reasonable disagreement.@ 
Mozon, 991 S.W.2d at 847; Montgomery, 810 S.W.2d at
391.  In balancing probative value and
unfair prejudice under rule 403, an appellate court presumes that the probative
value will outweigh any prejudicial effect. 
Montgomery, 810 S.W.2d at 389. 
It is therefore the objecting party=s burden
to demonstrate that the probative value is substantially outweighed by the
danger of unfair prejudice.  Hinojosa
v. State, 995 S.W.2d 955, 958 (Tex. App.CHouston
[14th Dist.] 1999, no pet.);  Poole,
974 S.W.2d at 897.  








The relevant criteria in determining whether the
prejudice of an extraneous offense clearly outweighs its probative value
include (1) the inherent probative force of the proffered item of evidence
along with (2) the proponent=s need
for that evidence against (3) any tendency of the evidence to suggest decision
on an improper basis, (4) any tendency of the evidence to confuse or distract
the jury from the main issues, (5) any tendency of the evidence to be given
undue weight by a jury that has not been equipped to evaluate the probative
force of the evidence, and (6) the likelihood that presentation of the evidence
will consume an inordinate amount of time or merely repeat evidence already
admitted.  Gigliobianco, 210
S.W.3d at 641B42.  A trial court does not have to perform the
balancing test on the record.  Yates,
941 S.W.2d at 367.  AIn
reviewing the trial court=s balancing test determination,
a reviewing court is to reverse the trial court=s
judgment >rarely and only after a clear
abuse of discretion.=@  Mozon, 991 S.W.2d at 847 (quoting
Montgomery, 810 S.W.2d at 389). 








In this case, the first two balancing criteria
weigh in favor of admitting the extraneous offense evidence.  The evidence was probative of the
relationship between Appellant and M.L. and the reason for M.L.=s
delayed outcry.  In light of Dr. Coffman=s
testimony that sexual abuse is more likely in a relationship where there is
also physical abuse, the evidence that Appellant physically abused M.L. makes
it more likely that he sexually abused M.L. 
Further, Appellant=s defense was that M.L. made up
the sexual abuse story; thus, the extraneous offense evidence was relevant to
M.L.=s
credibility.  See McCulloch, 39
S.W.3d at 681.  The State=s need
for the physical abuse and death-threat evidenceCin some
form, though not necessarily the detailed, graphic, and repetitive testimony
actually presented to the juryCwas
substantial to explain M.L.=s
delayed outcry.

The next two factors weigh in favor of
exclusion.  The detailed evidence of
Appellant=s physically abusing M.L. had a
definite tendency to suggest a decision on an improper basis, that is,
conviction for the physical abuse instead of the charged sexual assault.  Likewise, M.L.=s
horrific testimony about the Aninja
game@ and
being hung by the neck with a belt had the tendency to confuse or distract the
jury from the main issue, whether Appellant sexually assaulted M.L., and there
was a danger that the jury would give the physical abuse testimony undue
weight.








The final factorCthe
likelihood that presentation of the evidence will consume an inordinate amount
of time or merely repeat evidence already admittedCdoes not
clearly weigh in favor of admission or exclusion.  M.L.=s
testimony about the physical abuse comprises over seven pages of reporter=s
record, while his testimony about the sexual assault comprises two pages.  Dr. Coffman=s and
Kincaid=s
testimony was similarly skewed; for example, Dr. Coffman=s
testimony about M.L.=s statement concerning the
sexual assault comprises four lines of the record, while her testimony about
the physical abuse comprises sixty-six lines. 
But the question is whether the physical abuse testimony consumed an inordinate
amount of time.  See Gigliobianco,
210 S.W.3d at 642.  Because the alleged
physical abuse occurred repeatedly over a long period of time while the sexual
assault occurred just once, describing the physical abuse necessarily consumed
more time than describing the sexual assault. 
Therefore, we cannot say that the physical abuse testimony, as extensive
as it is, consumed an inordinate amount of time.  On the other hand, Dr. Coffman=s and
Kincaid=s
testimony largely repeated what M.L. had already told the jury, and this
repetition weighs in favor of exclusion, though only of Dr. Coffman=s and
Kincaid=s
testimony.  But we must review the trial
court=s ruling
in light of the evidence that was before the court at the time of its ruling, Hoyos,
982 S.W.2d at 422, and nothing in the record suggests that the trial court
should have known that the evidence of physical abuse would consume as much
time as it did or be as repetitive as it was when the court overruled Appellant=s
objections at the pretrial hearing.  













This is a close case.  The physical abuse evidence was
horrific.  It was undoubtedly prejudicial
to Appellant.  It was probably unfairly
prejudicial.  But it was probative, and
the balancing test factors, considered as a whole, do not clearly weigh in favor
of holding that the evidence=s unfair
prejudice substantially outweighed its probative value.  Thus, we cannot say that the trial court=s
overruling of Appellant=s rule 403 objection fell
outside the zone of reasonable disagreement, and we hold that the trial court
did not clearly abuse its discretion.  See
McCulloch, 39 S.W.3d at 681 (holding rule 403 did not require exclusion of
extraneous offense evidence when evidence was Aboth
strongly probative and strongly prejudicial@); Walker,
4 S.W.3d at 103; Allen v. State, No. 03-05-00755-CR, 2007 WL 178457, at
*1B2 (Tex.
App.CAustin
Jan. 23, 2007, no pet.) (mem. op., not designated for  publication) (holding trial court did not
abuse its discretion by admitting evidence of extraneous Abizarre
punishments,@ which included defendant=s
forcing complainant to hold jugs of water at arm=s length
for up to an hour, spanking her with a ping-pong paddle, and making her perform
calisthenics and stand in a corner while naked); Kenley v. State, No.
02-06-00127-CR, 2006 WL 2925159, at *3 (Tex. App.CFort
Worth Oct. 12, 2006, no pet.) (mem. op., not designated for publication).  We therefore overrule Appellant=s first
issue.[4]

2.     Extraneous evidence related to Christine








In his second point, Appellant argues that the
trial court erred by admitting extraneous testimony from Christine regarding
Appellant=s threatening and abusing her
and her children.  On direct examination,
Christine testified generally about her and the children=s
several changes of residence between Texas, Massachusetts, and Arkansas.  On cross, defense counsel questioned her more
closely about the changes of residence, with whom the family lived, and whether
Appellant was living with them.  Before
conducting redirect examination, the prosecutorCoutside
the presence of the juryCargued that Appellant had opened
the door to testimony regarding the reasons for the many changes of residence,
namely, Appellant=s threats and abuse directed at
her and the children.  The trial court
heard extensive (eighteen pages= worth)
voir dire testimony from Christine outside the presence of the jury about
Appellant=s violent behavior as well as
argument from counsel as to whether Appellant had opened the door to its
admission.  The trial court did not
pronounce a ruling on the record (the court asked the attorneys to meet in chambers
before the jury returned to the courtroom, but the chambers conference does not
appear in the record). 

When the trial resumed, the State asked Christine
why she moved several times without telling Appellant where she was going, and
she answered that she was afraid because Appellant said he would kill the
children while making her watch and then kill her.  Appellant did not object to the questions or
answers.

To preserve a complaint for our review, a party
must have presented to the trial court a timely request, objection, or motion
that states the specific grounds for the desired ruling if they are not
apparent from the context of the request, objection, or motion.  Tex. R. App. P. 33.1(a)(1); Mosley v.
State, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh=g), cert.
denied, 526 U.S. 1070 (1999). 
Further, the trial court must have ruled on the request, objection, or
motion, either expressly or implicitly, or the complaining party must have
objected to the trial court=s
refusal to rule.  Tex. R. App. P.
33.1(a)(2); Mendez v. State, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).








Appellant argued to the trial court that he had
not opened the door to evidence of abuse by cross-examining Christine.  But he did not object that admission of the
evidence violated rules 403, 404, and 405, as he now argues on appeal.  We therefore hold that Appellant failed to
preserve his complaint regarding Christine=s
testimony for our review, and we overrule his second point.

                                             Conclusion

Having overruled both of Appellant=s
points, we affirm the trial court=s
judgment.

PER
CURIAM

 

PANEL:  GARDNER and WALKER, JJ.; and DIXON W. HOLMAN
(Senior Justice, Retired, Sitting by Assignment).

 

DO NOT PUBLISH

Tex. R. App. P. 47.2(b)

 

DELIVERED:  March 27, 2009











[1]See Tex. R. App. P. 47.4.





[2]Other testimony indicated
that M.L. meant the names of various horror-movie villains.  





[3]The trial court also
granted Appellant a running objection. 
The State argues that the running objection extended only to M.L.=s testimony, not to Dr.
Coffman=s and Kincaid=s testimony, and that by
failing to object when the latter witnesses testified about extraneous physical
abuse allegations, Appellant failed to preserve his complaint for appeal.  Concerning the running objection, the trial
court said, AAnd for purposes of the
record, you may have a running objection to that, [Defense Counsel], so that it
would not be necessary, at least in my opinion, to have to stand up and
physically object tomorrow in the presence of the jury.@  The trial court did not specifically limit
the running objection to M.L.=s testimony, and all of the witnesses testified Atomorrow,@ i.e., the day after the
pretrial hearing.  Thus, in the interest
of justice, we construe the running objection to cover all extraneous offense
testimony regarding M.L., and we will address the merits of Appellant=s first point.





[4]Because we hold that the
trial court did not clearly abuse its discretion, we need not conduct a harm
analysis.  See Tex. R. App. P.
44.2.  We note that much of the State=s closing argument
emphasized the physical abuse testimony and even encouraged the jury to convict
Appellant Abecause [he is] the kind
of person@ who would Ahumiliate, . . .
brutalize, and . . . terrorize a three‑year‑old little boy.@  Because the State=s emphasis of
erroneously-admitted evidence is a harm-analysis factor, see Rich v. State,
160 S.W.3d 575, 577B78 (Tex. Crim. App.
2005), we will not set out or analyze the State=s argument.