# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH


NO. 2-07-174-CR

PHRORY MORAN GAMBLE                                       APPELLANT

V.

THE STATE OF TEXAS                                            STATE

------------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY

------------

# MEMORANDUM OPINION[1] ON
# PETITION FOR DISCRETIONARY REVIEW

------------

After reviewing Appellant's petition for discretionary review, we withdraw

our November 26, 2008, opinion and judgment and substitute the following.

**Introduction**

Appellant appeals his conviction and life sentence for aggravated sexual

assault of a child under fourteen years of age. In two points, Appellant argues

---

[1] *See* Tex. R. App. P. 47.4.

that the trial court abused its discretion by admitting evidence of extraneous offenses Appellant committed against the sexual assault complainant, M.L., and M.L.'s mother, Christine. We affirm.

**Factual and Procedural Background**

A grand jury indicted Appellant for aggravated sexual assault of a minor. Appellant pleaded "not guilty," and the case was tried to a jury.

M.L. was born in 1995, and he was eleven years old at the time of trial. His mother, Christine, testified that she met Appellant at work in 1998 and that they developed a romantic relationship while living together as roommates. Christine and Appellant had two children together, Z.H. in 1999 and K.H. in 2002. Christine testified that her relationship with Appellant was imperfect and that he eventually became physically abusive.

Christine testified that she moved to Boston with the children to get away from Appellant, but Appellant followed them to Boston two months later. She said that while they were living in Boston, M.L.'s teacher made a physical-abuse referral to Child Protective Services ("CPS"). Christine testified that CPS investigated and concluded that Appellant had physically abused M.L. Christine said that after living in Boston for about a year, she, Appellant, and the children moved to Arkansas, where Appellant's family lived. She later left Appellant and returned to Texas with the children.

2

Christine testified that when M.L. was almost ten, she and M.L were watching a television news program about a man who said he had been molested. She said that M.L. then told her that Appellant had blindfolded him, taken him to the bathroom, told him he was going to give him some candy, instructed him to open his mouth, and put Appellant's penis into M.L.'s mouth. She testified that M.L. said that he did not tell her sooner because he was scared Appellant would kill him if he told anyone. Christine reported M.L.'s outcry to Irving police, whose investigation ultimately led to this case.

M.L. testified that when he was three years old and lived in Texas (he could not remember what city) with Christine and Appellant, Appellant would sometimes watch him when Christine was at work. He testified that Appellant would play "the ninja game," in which Appellant would put a plastic grocery bag over M.L.'s head and prevent M.L. from breathing. He said that if he got dizzy and fell down, Appellant would tie the bag shut at M.L.'s neck. M.L. said they played the ninja game "a lot."

M.L. also testified that Appellant would sometimes choke him with one or both hands. He testified that Appellant told M.L. he would kill him if he told Christine about the ninja game. M.L. recounted the following incident, which he said happened in Boston around the time his teacher called CPS:

3

> He had put the plastic bag over my head, but this time for some reason he left a hole in there so I could breathe. And then I took advantage and opened it. And then he put another one over my head and this time I bit through it and then opened it. And then he put another one over my head and I bit through that one and opened it. And then he took all of them and shoved them in my mouth and took me in the kitchen and had me on the counter and screamed I was—he was going to kill me.

He said that on another occasion, Appellant pushed his head down onto a coffee table, leaving a permanent scar; the State, without objection, exhibited the scar to the jury.

M.L. said that on yet another occasion, Appellant became angry when M.L. would not eat a peanut butter sandwich. He testified that Appellant tied a belt around M.L.'s throat, hung him in a closet by the belt, and knocked on the door while "scream[ing] the scary movie guy's name."[2]

Finally, M.L. testified about the alleged sexual assault. He said that Appellant told M.L. that Appellant had some candy in the bathroom, took him into the bathroom, told him to close his eyes, and put his "private" into M.L.'s mouth. He said there was candy on Appellant's private. M.L. testified that he knew it was Appellant's private because he heard him "zipping . . . back up." He said he did not remember having previously said that Appellant had

---

[2] Other testimony indicated that M.L. meant the names of various horror-movie villains.

4

blindfolded him. He said he told Christine about this incident when he was nine and that he did not tell her sooner because he was afraid Appellant would kill him.

Dr. Jayme Coffman, medical director of a CARE team at Cook Children's Medical Center, testified that she had examined M.L.'s medical records, and she read to the jury notes from an interview M.L. gave to members of another CARE team. According to the notes, M.L. told the interviewer that Appellant had hung M.L. by his neck in a closet, tied plastic bags over M.L.'s head, and put his private in M.L.'s mouth. Dr. Coffman characterized the physical abuse described by M.L. as "serious and sadistic." She testified that abuse can be a form of control over children, and when asked whether physical dominance and sexual abuse "kind of go together," she answered,

> [A]ny time you have domestic violence, you're more likely to see physical abuse and/or sexual abuse. Any time you see physical abuse, you're more likely to see–I mean see domestic violence and/or sexual abuse. All three things are more common when you see any one.

Carolyn Kincaid, a Dallas CPS investigator, testified that she interviewed M.L. in June 2005. Kincaid said that M.L. told her that when he was about three, Appellant would choke him with his hands, tie grocery bags over his head, hang him by a belt in the closet, and, on one occasion, put his penis in M.L.'s mouth after telling M.L. that he was going to give him a piece of candy.

5

The jury convicted Appellant of aggravated sexual assault, and the trial court sentenced him to life in prison.

## Discussion

**1.    Extraneous offense evidence related to M.L.**

In his first point, Appellant argues that the trial court abused its discretion by admitting evidence concerning the extraneous offenses against M.L., specifically, the "ninja game," the choking and belt-hanging incidents, and the injury to M.L.'s head.  At a pretrial hearing regarding the admissibility of that evidence, the trial court heard testimony from M.L. about the extraneous offenses.  Appellant objected to the extraneous offense evidence as irrelevant, unrelated to the charged sexual assault, and unfairly prejudicial.  The trial court ruled that it would admit the evidence under code of criminal procedure article 38.37, section 2.[3]

---

[3] The trial court also granted Appellant a running objection.  The State argues that the running objection extended only to M.L.'s testimony, not to Dr. Coffman's and Kincaid's testimony, and that by failing to object when the latter witnesses testified about extraneous physical abuse allegations, Appellant failed to preserve his complaint for appeal.  Concerning the running objection, the trial court said, "And for purposes of the record, you may have a running objection to that, [Defense Counsel], so that it would not be necessary, at least in my opinion, to have to stand up and physically object tomorrow in the presence of the jury."  The trial court did not specifically limit the running objection to M.L.'s testimony, and all of the witnesses testified "tomorrow," i.e., the day after the pretrial hearing.  Thus, in the interest of justice, we construe the running objection to cover all extraneous offense testimony regarding M.L., and we will address the merits of Appellant's first point.

6

We review a trial court's evidentiary rulings for an abuse of discretion. *Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g). A trial court abuses its discretion only when the decision lies outside the zone of reasonable disagreement. *Green v. State*, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996). When determining whether a trial court's evidentiary ruling was an abuse of discretion, we review the ruling in light of the evidence that was before the court at the time of its ruling. *Rangel v. State*, 250 S.W.3d 96, 97–98 (Tex. Crim. App. 2008); *Hoyos v. State*, 982 S.W.2d 419, 422 (Tex. Crim. App. 1998); *see Cantu v. State*, No. 01-08-00263-CR, 2008 WL 4890035, at *6 (Tex. App.—Houston [1st Dist.] Nov. 13, 2008, no pet.) (mem. op., not designated for publication) (applying time-of-ruling standard to admission of extraneous evidence).

### a. Article 38.37

Code of criminal procedure article 38.37, section 2 provides,

> Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged [physical or sexual assault] shall be admitted for its bearing on relevant matters, including:

7

> (1) the state of mind of the defendant and the child; and
>
> (2) the previous and subsequent relationship between the defendant and the child.

Tex. Code Crim. Proc. Ann. art. 38.37 § 2 (Vernon Supp. 2008). Thus, article 38.37 is an exception to rule 404(b)'s prohibition on the admission of character-conformity extraneous offense evidence. *See id.*; Tex. R. Evid. 404(b). The State, as the proponent of extraneous offense evidence, bears the burden of showing admissibility of the evidence under article 38.37. *See Rankin v. State*, 974 S.W.2d 707, 718 (Tex. Crim. App. 1998) (op. on reh'g).

Evidence of an extraneous offense is relevant to explain why a victim of sexual assault did not make a prompt outcry. *Brown v. State*, 657 S.W.2d 117, 119 (Tex. Crim. App. 1983) (holding sexual assault victim's testimony that appellant threatened to kill her family was admissible to show reason for delayed outcry); *Isenhower v. State*, 261 S.W.3d 168, 179 (Tex. App.—Houston [14th Dist.] 2008, no pet.); *Walker v. State*, 4 S.W.3d 98, 103 (Tex. App.—Waco 1999, pet. ref'd) (holding evidence that defendant subjected complainant to numerous sexual and physical assaults relevant under article 38.37 to show reason for delayed outcry). It is also relevant to show the reason for a complainant's acquiescence to sexual assault and a defendant's dominance over the complainant. *McCulloch v. State*, 39 S.W.3d 678, 681

(Tex. App.—Beaumont 2001, pet. ref'd) (holding evidence that defendant committed extraneous acts of sexual assault against complainant when pretending to discipline her relevant under 38.37 to show complainant's and defendant's state of mind, victim's fear and compelled acquiescence, defendant's intent and ability to commit crime, and defendant's misuse of his position of authority as family disciplinarian to commit crime).

In this case, evidence of Appellant's physically abusing M.L. was relevant to show the relationship between Appellant and M.L. before and after the alleged sexual assault under article 38.37. *See* Tex. Code Crim. Proc. Ann. art. 38.37 § 2. Appellant's threats to kill M.L. were admissible to explain why M.L. waited six years before making his outcry to Christine. *See Brown*, 657 S.W.2d at 119; *Isenhower*, 261 S.W.3d at 179. The physical abuse evidence also demonstrated Appellant's dominance over M.L. *See McCulloch*, 39 S.W.3d at 681. We therefore hold that the trial court did not abuse its discretion by ruling that the extraneous offense evidence was relevant under article 38.37.

### b. Rule 403 Balancing Test

Evidence relevant under article 38.37 must nevertheless be excluded if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. Tex. R. Evid. 403; *Mozon v. State*, 991 S.W.2d 841, 847

9

(Tex. Crim. App. 1999). "[I]n prosecutions for sexual offenses against children, 'extraneous acts between the complainant and the defendant are usually more probative than prejudicial.'" *Poole v. State*, 974 S.W.2d 892, 898 (Tex. App.—Austin 1998, pet. ref'd) (quoting *Boutwell v. State,* 719 S.W.2d 164, 178 (Tex. Crim. App. 1985)). Rule 403 provides, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403. "Probative value" refers to the inherent probative force of an item of evidence—that is, how strongly it serves to make more or less probable the existence of a fact of consequence to the litigation—coupled with the proponent's need for that item of evidence. *Gigliobianco v. State,* 210 S.W.3d 637, 641 (Tex. Crim. App. 2006). "Unfair prejudice" refers to a tendency to suggest a decision on an improper basis, commonly, though not necessarily, an emotional one. *Id.* Only "unfair" prejudice provides the basis for exclusion of relevant evidence. *Montgomery*, 810 S.W.2d at 389. "Confusion of the issues" refers to a tendency to confuse or distract the jury from the main issues in the case. *Gigliobianco*, 210 S.W.3d at 641. "Misleading the jury" refers to a tendency of an item of evidence to be given undue weight by the jury on other than emotional grounds. *Id.*

10

When a defendant makes a rule 403 objection, the trial court has a nondiscretionary obligation to weigh the probative value of the evidence against the unfair prejudice of its admission. *Montgomery*, 810 S.W.2d at 389. By overruling such an objection, the trial court is assumed to have applied a rule 403 balancing test and determined the evidence was admissible. *See Poole*, 974 S.W.2d at 897; *Yates v. State*, 941 S.W.2d 357, 367 (Tex. App.—Waco 1997, pet. ref'd); *Caballero v. State*, 919 S.W.2d 919, 922 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd).

The trial court has wide latitude to admit or exclude evidence of extraneous offenses. *Montgomery*, 810 S.W.2d at 390; *Poole*, 974 S.W.2d at 897. A reviewing court must therefore recognize that the trial court is in a superior position to gauge the impact of the relevant evidence and not reverse a trial court's ruling if it is within the "zone of reasonable disagreement." *Mozon*, 991 S.W.2d at 847; *Montgomery*, 810 S.W.2d at 391. In balancing probative value and unfair prejudice under rule 403, an appellate court presumes that the probative value will outweigh any prejudicial effect. *Montgomery*, 810 S.W.2d at 389. It is therefore the objecting party's burden to demonstrate that the probative value is substantially outweighed by the danger of unfair prejudice. *Hinojosa v. State*, 995 S.W.2d 955, 958 (Tex. App.—Houston [14th Dist.] 1999, no pet.); *Poole*, 974 S.W.2d at 897.

11

The relevant criteria in determining whether the prejudice of an extraneous offense clearly outweighs its probative value include (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Gigliobianco,* 210 S.W.3d at 641–42. A trial court does not have to perform the balancing test on the record. *Yates*, 941 S.W.2d at 367. "In reviewing the trial court's balancing test determination, a reviewing court is to reverse the trial court's judgment 'rarely and only after a clear abuse of discretion.'" *Mozon*, 991 S.W.2d at 847 (quoting *Montgomery*, 810 S.W.2d at 389).

In this case, the first two balancing criteria weigh in favor of admitting the extraneous offense evidence. The evidence was probative of the relationship between Appellant and M.L. and the reason for M.L.'s delayed outcry. In light of Dr. Coffman's testimony that sexual abuse is more likely in a relationship where there is also physical abuse, the evidence that Appellant

12

physically abused M.L. makes it more likely that he sexually abused M.L. Further, Appellant's defense was that M.L. made up the sexual abuse story; thus, the extraneous offense evidence was relevant to M.L.'s credibility. *See McCulloch*, 39 S.W.3d at 681. The State's need for the physical abuse and death-threat evidence—in some form, though not necessarily the detailed, graphic, and repetitive testimony actually presented to the jury—was substantial to explain M.L.'s delayed outcry.

The next two factors weigh in favor of exclusion. The detailed evidence of Appellant's physically abusing M.L. had a definite tendency to suggest a decision on an improper basis, that is, conviction for the physical abuse instead of the charged sexual assault. Likewise, M.L.'s horrific testimony about the "ninja game" and being hung by the neck with a belt had the tendency to confuse or distract the jury from the main issue, whether Appellant sexually assaulted M.L., and there was a danger that the jury would give the physical abuse testimony undue weight.

The final factor—the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted—does not clearly weigh in favor of admission or exclusion. M.L.'s testimony about the physical abuse comprises over seven pages of reporter's

record, while his testimony about the sexual assault comprises two pages. Dr. Coffman's and Kincaid's testimony was similarly skewed; for example, Dr. Coffman's testimony about M.L.'s statement concerning the sexual assault comprises four lines of the record, while her testimony about the physical abuse comprises sixty-six lines. But the question is whether the physical abuse testimony consumed an *inordinate* amount of time. *See Gigliobianco,* 210 S.W.3d at 642. Because the alleged physical abuse occurred repeatedly over a long period of time while the sexual assault occurred just once, describing the physical abuse necessarily consumed more time than describing the sexual assault. Therefore, we cannot say that the physical abuse testimony, as extensive as it is, consumed an inordinate amount of time. On the other hand, Dr. Coffman's and Kincaid's testimony largely repeated what M.L. had already told the jury, and this repetition weighs in favor of exclusion, though only of Dr. Coffman's and Kincaid's testimony. But we must review the trial court's ruling in light of the evidence that was before the court at the time of its ruling, *Hoyos*, 982 S.W.2d at 422, and nothing in the record suggests that the trial court should have known that the evidence of physical abuse would consume as much time as it did or be as repetitive as it was when the court overruled Appellant's objections at the pretrial hearing.

14

This is a close case. The physical abuse evidence was horrific. It was undoubtedly prejudicial to Appellant. It was probably unfairly prejudicial. But it was probative, and the balancing test factors, considered as a whole, do not clearly weigh in favor of holding that the evidence's unfair prejudice *substantially* outweighed its probative value. Thus, we cannot say that the trial court's overruling of Appellant's rule 403 objection fell outside the zone of reasonable disagreement, and we hold that the trial court did not clearly abuse its discretion. *See McCulloch*, 39 S.W.3d at 681 (holding rule 403 did not require exclusion of extraneous offense evidence when evidence was "both strongly probative and strongly prejudicial"); *Walker*, 4 S.W.3d at 103; *Allen v. State*, No. 03-05-00755-CR, 2007 WL 178457, at *1–2 (Tex. App.—Austin Jan. 23, 2007, no pet.) (mem. op., not designated for publication) (holding trial court did not abuse its discretion by admitting evidence of extraneous "bizarre punishments," which included defendant's forcing complainant to hold jugs of water at arm's length for up to an hour, spanking her with a ping-pong paddle, and making her perform calisthenics and stand in a corner while naked); *Kenley v. State*, No. 02-06-00127-CR, 2006 WL 2925159, at *3 (Tex. App.—Fort

Worth Oct. 12, 2006, no pet.) (mem. op., not designated for publication). We therefore overrule Appellant's first issue.[4]

## 2. Extraneous evidence related to Christine

In his second point, Appellant argues that the trial court erred by admitting extraneous testimony from Christine regarding Appellant's threatening and abusing her and her children. On direct examination, Christine testified generally about her and the children's several changes of residence between Texas, Massachusetts, and Arkansas. On cross, defense counsel questioned her more closely about the changes of residence, with whom the family lived, and whether Appellant was living with them. Before conducting redirect examination, the prosecutor—outside the presence of the jury—argued that Appellant had opened the door to testimony regarding the reasons for the many changes of residence, namely, Appellant's threats and abuse directed at her and the children. The trial court heard extensive (eighteen pages' worth) voir dire

---

[4] Because we hold that the trial court did not clearly abuse its discretion, we need not conduct a harm analysis. *See* Tex. R. App. P. 44.2. We note that much of the State's closing argument emphasized the physical abuse testimony and even encouraged the jury to convict Appellant "because [he is] the kind of person" who would "humiliate, . . . brutalize, and . . . terrorize a three-year-old little boy." Because the State's emphasis of erroneously-admitted evidence is a harm-analysis factor, *see Rich v. State*, 160 S.W.3d 575, 577–78 (Tex. Crim. App. 2005), we will not set out or analyze the State's argument.

16

testimony from Christine outside the presence of the jury about Appellant's violent behavior as well as argument from counsel as to whether Appellant had opened the door to its admission. The trial court did not pronounce a ruling on the record (the court asked the attorneys to meet in chambers before the jury returned to the courtroom, but the chambers conference does not appear in the record).

When the trial resumed, the State asked Christine why she moved several times without telling Appellant where she was going, and she answered that she was afraid because Appellant said he would kill the children while making her watch and then kill her. Appellant did not object to the questions or answers.

To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion. Tex. R. App. P. 33.1(a)(1); *Mosley v. State*, 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied,* 526 U.S. 1070 (1999). Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have

17

objected to the trial court's refusal to rule.  Tex. R. App. P. 33.1(a)(2); *Mendez v. State*, 138 S.W.3d 334, 341 (Tex. Crim. App. 2004).

Appellant argued to the trial court that he had not opened the door to evidence of abuse by cross-examining Christine.  But he did not object that admission of the evidence violated rules 403, 404, and 405, as he now argues on appeal.  We therefore hold that Appellant failed to preserve his complaint regarding Christine's testimony for our review, and we overrule his second point.

## Conclusion

Having overruled both of Appellant's points, we affirm the trial court's judgment.

PER CURIAM

PANEL: GARDNER and WALKER, JJ.; and DIXON W. HOLMAN (Senior Justice, Retired, Sitting by Assignment).

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  March 27, 2009

18