# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00266-CR

**Adam Renee Castro, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT
### NO. 35499, HONORABLE LLOYD DOUGLAS SHAVER, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Adam Renee Castro of aggravated sexual assault of a child, *see* Tex. Penal Code Ann. § 22.021 (West 2011), and assessed punishment at ninety years in prison and a $10,000 fine. Castro raises two issues on appeal, asserting that the trial court erred in (1) submitting a jury charge allowing the jury to convict him of aggravated sexual assault of a child and (2) admitting extraneous-offense evidence during trial. Because we conclude that the trial court did not err in either determination, we affirm the trial court's judgment.

## BACKGROUND

According to the trial record, the event that gave rise to Castro's conviction for aggravated sexual assault of a child occurred on June 14, 2008, in Marble Falls. On that day, Castro was with his girlfriend, Tessa Gonzalez ("Tessa"), and her extended family at a motel. Castro and Tessa had traveled to Marble Falls for Tessa's family reunion. After going out to dinner in

Marble Falls that evening, Tessa's family returned to the motel and gathered in the parking lot to socialize. Several young children were among the family members who were gathered, including the victim, who was nine years old at the time. The victim was Tessa's niece and had known Castro since she was about four years old. On the night of June 14, while the family was gathered, the victim wanted to go to her family's motel room to get an iPod, and she asked her mother for the room key in order to do so. Her mother gave her the key, and she left for the room. At the time, Castro was with Tessa. Tessa testified that when the victim left to go to the room, Castro said, "I'll go with her," and left.

The victim testified that there were two doors going into the motel room. She testified that when she opened one of the doors and walked into the room, she noticed that the door did not shut behind her. When she turned around, she saw Castro standing there. The victim testified that Castro had "pulled down his pants" and that she saw his "private." The victim testified that she started walking backwards and asked, "What are you doing?" She testified that Castro said, "Come here" twice, and she refused both times. She tried to roll over the bed to get to the other door, but he grabbed her foot and pulled her toward him. She testified that she pushed him away and threw a phone at him, but he kept grabbing her. She testified that he pulled her toward him on the bed, pulled down her pants, and got on top of her. She tried to pull her pants up several times, but he pulled them back down. She testified that he then put his "private" in her "back private." At some point, the victim's aunt began knocking on the door, and Castro got up and left the room. After Castro left, the victim pulled her pants up and went to the bathroom. She then left the room. She testified that she did not immediately tell anyone what happened but did so later that evening,

2

when she told Tessa and her mother. The victim's mother testified that upon learning what happened, she looked at the victim's legs and saw red marks between her legs. The victim's mother then called the police. Castro was later arrested.

During the trial, evidence of Castro's extraneous misconduct toward the victim was admitted over Castro's objection. The evidence showed that in the years before the June 2008 incident, the victim had spent considerable time around Castro. Castro and Tessa had lived across the street from her and in the same home with her at different time periods. The victim testified that during the time she was living in close proximity to Castro and Tessa, Castro acted in a sexual manner toward her on several occasions. She testified that Castro put her on his lap and moved her back and forth on his "private area" and that he did this many different times. The victim testified that on other occasions, Castro pulled down his pants, asked her to kiss his "private," and put his finger inside her "private area." She testified that she did not tell Tessa what happened at the time because she was afraid Tessa would not believe her and would hate her. She testified that she was also afraid that Castro would hurt her if she told anyone.

Also admitted at trial over Castro's objection was the testimony of the lead investigator in the case, Thomas Dillard, regarding the way "grooming" is used by child predators to gradually move from somewhat-passive sexual acts to more aggressive or frank sexual acts so that the victim would be less likely to object and the predator would be less likely to get caught. Dillard testified that Castro used "grooming" with the victim in this case.

In a three-count indictment, Castro was charged with three offenses, all occurring on June 14, 2008: indecency with a child by exposure (count one), aggravated sexual assault of a child

3

by penetrating the child's anus (count two), and aggravated sexual assault of a child by penetration of the child's sexual organ (count three). When Castro was arraigned in front of the jury before trial began, he pleaded guilty to count one and not guilty to counts two and three. The trial court proceeded to trial on counts two and three. The State later abandoned count three. At the charge conference, Castro argued for the first time that the State could not submit a charge allowing the jury to convict him of assault by penetration of the child's anus (count two) because he had pleaded guilty to the indecency by exposure charge (count one), which he asserted was subsumed by the assault charge. Castro contended that he could not be convicted of both the exposure charge and the assault charge because they were both part of the same offense.

After considering the arguments of both parties, the trial court instructed the jury that it could find Castro guilty of one of the two counts but not both. The jury found Castro guilty of sexually assaulting the victim by penetration and not guilty of indecency by exposure. The jury then assessed punishment at ninety years in prison and a $10,000 fine. This appeal followed.

## DISCUSSION

On appeal, Castro raises two issues, asserting that the trial court erred in (1) submitting a jury charge allowing the jury to convict him of aggravated sexual assault and (2) admitting the victim's testimony regarding previous extraneous offenses committed against her by Castro. We address each issue below.

4

***Jury Charge***

Castro argues that the trial court erred in submitting the aggravated sexual assault charge to the jury because the State was barred from prosecuting him for the charge as soon as he pleaded guilty to indecency by exposure. He contends that he could not be convicted of both exposure and aggravated sexual assault because the exposure of his penis occurred during the course of the alleged aggravated sexual assault and was therefore subsumed by the assault. *See Patterson v. State*, 152 S.W.3d 88, 92 (Tex. Crim. App. 2004) (holding that exposure conviction could not stand because exposure was "incident to and subsumed by" aggravated sexual assault of victim by penetration).

When a party claims that there is a jury-charge error, the first step is to determine whether there is indeed error in the charge. *Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009). Then, if there was error and the appellant objected to the error at trial, we must reverse if the error is calculated to injure the rights of the defendant. *Id*. In other words, we must reverse if the error has caused "some harm" to the defendant. *Id*. We use an abuse of discretion standard in reviewing a trial court's decision to submit or refuse a jury instruction. *Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006). A trial court abuses its discretion if it acts arbitrarily or unreasonably or without reference to guiding rules and principles. *Downer v. Aquamarine Operators, Inc*., 701 S.W.2d 238, 241-42 (Tex. 1985).

The State does not dispute that the exposure was subsumed by the assault. Although we believe this is a close question in this case, we need not decide the issue because even assuming that the exposure was subsumed by the assault, Castro cannot prevail on this issue because the trial

5

court's acceptance of a guilty plea to a lesser offense does not bar prosecution for the greater offense. *See Kham v. State*, 689 S.W.2d 324, 326 (Tex. App.—Fort Worth 1985, pet. ref'd) (citing *Ohio v. Johnson*, 467 U.S. 493, 501 (1984)). It is well settled that the right of election belongs to the State and not the defendant, and the State is entitled to submit the more serious offense to the jury. *Id*. at 327; *Reseburg v. State*, 656 S.W.2d 84, 87 (Tex. App.—Tyler 1983, pet. ref'd). A defendant cannot force an election by pleading guilty to a lesser offense.[1] *See Kham*, 689 S.W.2d at 327; *Decker v. State*, 734 S.W.2d 393, 394 (Tex. App.—Houston [1st Dist.] 1987, pet. ref'd).

Further, error would have occurred under *Patterson* only if the trial court had allowed the jury to convict Castro of both offenses. The trial court did not do so here. Here, the jury charge included one instruction on the exposure charge and another instruction on the assault charge and then stated in boldface type, "You are instructed that you can find the defendant guilty <u>only on one count</u>." The jury found Castro guilty of the assault and not guilty of the exposure. Thus, there was no error under *Patterson* because the charge permitted the jury to convict Castro of only one offense.[2] *See Patterson*, 152 S.W.3d at 89, 92 (remedy for error in submitting exposure and assault

---

[1] Castro contends that a subsumed act under *Patterson* is not equivalent to a "lesser included" offense under *Kham*. However, he does not cite, and we have not found, any legal authority for that proposition. To the contrary, indecency by exposure in the course of an aggravated sexual assault is considered a lesser included offense of the assault. *See Hutchins v. State*, 992 S.W.2d 629, 632 (Tex. App.—Austin 1999, pet. ref'd).

[2] Castro also argues that the trial court was required to immediately hold a punishment hearing on the exposure offense as soon as he pleaded guilty to it. *See* Tex. Code Crim. Proc. Ann. art. 26.14 (West 2009) ("Where a defendant in a case of felony persists in pleading guilty . . . a jury shall be impaneled to assess the punishment and evidence may be heard to enable them to decide thereupon . . . ."). However, we need not address the issue because we have already determined that a plea of guilty to the exposure did not preclude the State from proceeding to trial on the assault.

charges to jury when exposure was subsumed by assault was reversal of conviction for exposure); *Crocker v. State*, 573 S.W.2d 190, 197-98 (Tex. Crim. App. 1978) (no error when two counts arising out of same transaction were submitted to jury in conditional manner, allowing jury to return guilty verdict on one count only).

Because we conclude that there was no error in the jury charge and that the trial court therefore did not abuse its discretion in submitting the charge to the jury, we overrule Castro's first issue.

---

Even if we were required to address the issue, Castro has not cited, and we have not found, any authority for the proposition that a trial court must proceed immediately to a punishment hearing after a defendant pleads guilty to a felony charge rather than first proceeding to trial on other offenses. Article 26.14 of the code of criminal procedure states only that "a jury shall be impaneled to assess the punishment . . . ." It does not require that the trial court do so within a certain period of time.

We further note that even if the trial court had proceeded directly to a punishment hearing on the exposure charge when Castro pleaded guilty, all of the evidence regarding the assault would still have been admissible in the punishment hearing. *See* Tex. Code Crim. Proc. Ann. art. 37.07(3)(a)(1) (West Supp. 2010). Article 37.07(3)(a)(1) states:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

*Id*. Based on article 37.07(3)(a)(1), the trial court could have admitted at a punishment hearing on the exposure offense all of the same evidence that was admitted at the trial on the assault, including the testimony of the victim, the victim's mother, the nurse who examined the victim after the assault, and the DNA analyst who examined DNA samples collected from the victim.

7

*Extraneous-Offense Evidence*

In his second issue, Castro asserts that the trial court erred in admitting evidence concerning extraneous offenses committed by him against the victim. The evidence referenced by Castro was admitted through the testimony of the victim, who testified that in the years before the June 2008 assault, Castro had shown her his "private," put her on his lap and moved her back and forth on his "private area," put his finger into her "private area," and tried to make her kiss his "private." The victim testified that she did not tell her aunt what was happening at the time because she thought her aunt would not believe her and would hate her, and she thought Castro would hurt her if she told anyone. At trial, Castro objected to the testimony under Rule 403 of the rules of evidence, arguing that the probative value of the evidence was substantially outweighed by the danger of unfair prejudice. *See* Tex. R. Evid. 403. The State argued that the evidence should be admitted because it showed that Castro had been grooming the victim before the June 2008 assault and because it helped explain why the victim did not make an immediate outcry. The State also argued that the trial court should admit the testimony because the evidence "put [the June 2008 incident] in the proper context" and showed that Castro's contact with the victim in June 2008 was not a mistake or accident. After hearing the parties' arguments, the trial court admitted the testimony.

We review trial court rulings on the admissibility of evidence for abuse of discretion. *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). A trial court abuses its discretion in an admissibility ruling when its ruling is arbitrary or unreasonable. *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). A trial court does not abuse its discretion if its

8

decision is within "the zone of reasonable disagreement." *Bigon v. State*, 252 S.W.3d 360, 367 (Tex. Crim. App. 2008).

On appeal, Castro reiterates his arguments from the trial court, contending that the extraneous-offense evidence was not probative of whether the June 2008 assault occurred and that any probative value of the evidence was substantially outweighed by the danger of unfair prejudice. The State counters by arguing that the extraneous-offense evidence was admissible pursuant to article 38.37 of the code of criminal procedure. *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2 (West Supp. 2010). Article 38.37 states, in relevant part:

> Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including:
>
> (1)  the state of mind of the defendant and the child; and
>
> (2)  the previous and subsequent relationship between the defendant and the child.

*Id*. In cases in which article 38.37 applies, it supersedes rule 404 of the rules of evidence, which states that "[e]vidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith." *See* Tex. R. Evid. 404(b); *DeLeon v. State*, 77 S.W.3d 300, 311 n.4 (Tex. App.—Austin 2001, pet. ref'd). Even when evidence is relevant under article 38.37, however, the trial court is still required to conduct a rule 403 balancing test if the defendant makes a proper objection, as Castro did here. *Hitt v. State*, 53 S.W.3d 697, 706 (Tex.

9

App.—Austin 2001, pet. ref'd).  Accordingly, we will consider the admissibility of the evidence under both article 38.37 and rule 403.

### A.    Article 38.37

Castro contends that the extraneous-offense evidence was irrelevant because it did not have any tendency to make the commission of the alleged assault any more or less probable. However, the evidence was relevant under article 38.37 to show the relationship between Castro and the victim and their respective states of mind.  *See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2.  The evidence showed a pattern of behavior on the part of Castro that was consistent with the concept of "grooming," which was described in the lead investigator's testimony as a strategy used by child predators to gradually move from somewhat-passive sexual acts to more aggressive or frank sexual acts so that the victim would be less likely to object and the predator would be less likely to get caught.  Evidence of the series of extraneous acts committed by Castro against the victim before the June 2008 assault falls squarely within the type of evidence allowed under article 38.37.  In addition, the evidence was also relevant to explain why the victim did not make a prompt outcry in the initial moments after the assault.  *See Brown v. State*, 657 S.W.2d 117, 119 (Tex. Crim. App. 1983); *Isenhower v. State*, 261 S.W.3d 168, 179 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

### B.    Rule 403

Castro also argues that the trial court erred in overruling his rule 403 objection to the extraneous-offense evidence because the probative value of the evidence was substantially

10

outweighed by the danger of unfair prejudice.[3]  *See* Tex. R. Evid. 403.  The trial court is given wide latitude in weighing the concerns of unfair prejudice under Rule 403.  *See Mozon v. State*, 991 S.W.2d 841, 846-47 (Tex. Crim. App. 1999); *Montgomery v. State*, 810 S.W.2d 372, 391-92 (Tex. Crim. App. 1991) (op. on reh'g).  In reviewing the trial court's balancing test determination under rule 403, we presume that the probative value of the evidence outweighs any prejudicial effect.  *Montgomery*, 810 S.W.2d at 391.  We reverse the trial court's ruling "rarely and only after a clear abuse of discretion." *Mozon*, 991 S.W.2d at 847 (quoting *Montgomery*, 810 S.W.2d at 392).

The relevant factors in determining whether the prejudice of an extraneous offense substantially outweighs its probative value include:  (1) how compellingly the extraneous-offense evidence serves to make a fact of consequence more or less probable—a factor that is related to the strength of the evidence presented by the proponent to show the defendant in fact committed the extraneous offense; (2) the potential the other offense evidence has to impress the jury "in some irrational but nevertheless indelible way"; (3) the time the proponent will need to develop the evidence, during which the jury will be distracted from consideration of the indicted offense; and (4) the force of the proponent's need for this evidence to prove a fact of consequence, i.e., whether the proponent has other probative evidence available to him to help establish this fact, and whether this fact is related to an issue in dispute.  *Id.*

---

[3] Castro also asserts that the trial court erred in failing to conduct a Rule 403 balancing test on the record before overruling his objection.  However, Rule 403 does not require that the balancing test be performed on the record. *Poole v. State*, 974 S.W.2d 892, 897 (Tex. App.—Austin 1998, pet. ref'd); *Yates v. State*, 941 S.W.2d 357, 367 (Tex. App.—Waco 1997, pet. ref'd).  In overruling a Rule 403 objection, the trial court is assumed to have applied a rule 403 balancing test and determined the evidence was admissible. *Poole*, 974 S.W.2d at 897; *Yates*, 941 S.W.2d at 367.

Here, the first factor weighs in favor of admitting the extraneous-offense evidence because the evidence was probative of the relationship between Castro and the victim, increased the probability that Castro would have felt emboldened enough to assault the victim in June 2008, and helped explain why there was a slight delay in the victim's outcry. The second and third factors also weigh in favor of admission of the evidence because the victim's testimony about the June 2008 assault was more graphic and time-consuming than the evidence of the extraneous acts, thus likely overshadowing any inflammatory response the jury may have had to testimony about the extraneous acts. The testimony about the assault comprised six pages of the trial record, whereas the testimony about all of the extraneous acts combined comprised only three pages of the record. The fourth factor also weighs in favor of admission of the evidence because the State had no other evidence that could similarly illustrate the relationship between Castro and the victim, the states of mind of Castro and the victim, and the reason why the victim did not immediately tell someone about the assault in the moments after it occurred.

### C. Conclusion Regarding Extraneous-Offense Evidence

Based on article 38.37 of the code of criminal procedure and rule 403 of the rules of evidence, we conclude that the trial court did not abuse its discretion in admitting the extraneous-offense evidence. Tex. Code Crim. Proc. Ann. art. 38.37, § 2; Tex. R. Evid. 403; *Mozon*, 991 S.W.2d at 847. Accordingly, we overrule Castro's second issue.

### CONCLUSION

Because we find no error in the trial court's determinations, we affirm the trial court's judgment.

_____

                 Diane M. Henson, Justice

Before Chief Justice Jones, Justices Henson and Goodwin

Affirmed

Filed:   August 26, 2011

Do Not Publish