**Affirmed and Memorandum Opinion filed July 19, 2012.**



In The

# Fourteenth Court of Appeals

### NO. 14-11-00655-CR

**RAYMOND CHARLES EVERHART, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 174th District Court
Harris County, Texas
Trial Court Cause No. 1275124**

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant, Raymond Charles Everhart, for assault of a person with whom he had a "dating relationship" and assessed punishment at three years' confinement. On appeal, appellant contends the evidence is legally insufficient to support the conviction and the trial court committed error in the jury charge. We affirm.

### I. BACKGROUND

The complainant, April Villarreal, provided the following testimony regarding her relationship with appellant and the incident at issue. Villarreal characterized the relationship as "more than friends." She first met appellant at a "research study program"

about two months before the incident, but they parted company at that time. Approximately two-a-half weeks later, they met at a bus stop and rode the bus to appellant's apartment where they visited but did not have sex. They were together a total of two or three times between their first meeting and the incident at issue. On each occasion, they rode the bus together to appellant's apartment. They had sex on at least one of those occasions, before the incident at issue. When they boarded the bus on the afternoon of August 20, 2010, another man sat next to Villarreal before appellant could take that seat. After they arrived at appellant's apartment, he called Villarreal a "bitch" and asked, "How could you let another man sit beside you, and how can you disrespect me like that?" Appellant then grabbed Villarreal by the throat, lifted her off the floor, and choked her into unconsciousness. When Villarreal awoke, she was lying on the floor and gasping for air. Appellant "punched" her and threatened to strike her again if she continued screaming and "whining." Villarreal was afraid to call the police or attempt to leave, and she had sex with appellant after the incident. In the morning, Villarreal "escape[d]" under the guise of going to a hospital but went to her friend's home.

Appellant provided the following testimony. He first met Villarreal at a bus station near the research center about five or six weeks before the incident at issue. They rode to his apartment where appellant paid Villarreal for sex by buying minutes for her phone card and providing cash. About two or three weeks later, they met by chance at a transit center and rode a bus to his apartment. Appellant paid Villarreal, but they did not have sex because she "had something to do" and quickly left. On the day of the incident, they met again by chance at a store. Appellant told Villarreal he would "take care of [her] if [she] took care of me." After they rode the bus to his apartment, appellant asked if she would "kick with" him, which meant spend the night. They had sex that night, for which appellant paid Villarreal. Appellant also gave Villarreal his cell phone to order pizza and "stuff," but she did not do so. Villarreal left early the following morning. Appellant denied "dating" Villarreal and claimed he had a girlfriend. Appellant also

2

denied striking or choking Villarreal and claimed they did not fight that night except she "had a problem" with his girlfriend continually calling.

According to further testimony, Villarreal's friend phoned appellant the morning after the incident and berated him for his actions. Appellant approached a police officer and reported that a woman was harassing him. When the officer called the woman's number, Villarreal answered. Based on her statements, the officer had Villarreal brought to the police station. Officers observed that Villarreal's neck, eye, head, and lip were bruised and swollen. Villarreal gave a statement to police, but appellant refused to provide a statement.

## II. ANALYSIS

### A.    Legal Sufficiency

In his sole stated issue, appellant contends the evidence is legally insufficient to support his conviction. When reviewing sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine, based on that evidence and any reasonable inferences therefrom, whether any rational fact finder could have found the elements of the offense beyond a reasonable doubt. *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011) (citing *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979)). We do not sit as thirteenth juror and may not substitute our judgment for that of the fact finder by re-evaluating weight and credibility of the evidence. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Rather, we defer to the responsibility of the fact finder to fairly resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Id.* This standard applies equally to both circumstantial and direct evidence. *Id.* Our duty as reviewing court is to ensure the evidence presented actually supports a conclusion that the defendant committed the crime. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007).

A person commits assault if he "intentionally, knowingly, or recklessly causes bodily injury to another . . . ." Tex. Penal Code Ann. § 22.01(a)(1) (West 2011). The

offense is generally a Class A misdemeanor but is elevated to a third-degree felony if (1) the offense is committed against a person with whom the defendant has a "dating relationship," and (2) "the offense is committed by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of the person by applying pressure to the person's throat or neck or by blocking the person's nose or mouth." *See id.* § 22.01(b)(2)(B); Tex. Fam. Code Ann. § 71.0021(b) (West Supp. 2011).

Appellant contends only that the evidence is legally insufficient to support the jury's finding he and Villarreal had a "dating relationship." As the jury was instructed, "dating relationship" means "a relationship between individuals who have or have had a continuing relationship of a romantic or intimate nature." Tex. Fam. Code Ann. §71.0021(b). The existence of such a relationship shall be determined based on consideration of (1) length of the relationship, (2) nature of the relationship, and (3) frequency and type of interaction between the persons involved in the relationship. *Id.* A casual acquaintanceship or ordinary fraternization in a business or social context does not constitute a "dating relationship" under Subsection 71.0021(b). *Id.* § 71.0021(c).

According to Villarreal, she and appellant spent time together on at least four occasions over a two-month period, and even appellant acknowledged they were together at least three times. Whether they were together three times or more, the "length of the relationship" and "frequency . . . of interaction" support the jury's finding of a "dating relationship," particularly considering that they had sex on at least some of these occasions. The crux of appellant's contention is that the relationship did not satisfy the above definition because it consisted solely of his retaining Villarreal's services as a prostitute. Therefore, the relevant inquiry is whether the "nature of the relationship" and "type of interaction" support the finding of a dating relationship.

Notably, appellant was the only witness who testified that he paid Villarreal for sexual relations. Villarreal admitted she was convicted for prostitution in 2007 but testified she was "not doing that anymore." It is unclear whether Villarreal meant she no longer engaged in prostitution after the previous offense or just by the time of trial.

4

Regardless, absent from Villarreal's testimony was any indication of whether appellant paid her for sexual relations. The jury was free to disbelieve appellant's testimony that he paid her.

Nonetheless, even if appellant did pay Villarreal for sexual relations, the following evidence and reasonable inferences there from support the finding that they had a "dating relationship"—not solely a prostitute-customer relationship: the term "more than friends," used by Villarreal, generally implies a romantic relationship; Villarreal's testimony they did not have sex on her first visit to appellant's apartment negated his claim that their relationship consisted solely of her providing services as a prostitute; the fact that they always travelled together to appellant's apartment was indicative of a romantic relationship; it is a reasonable inference that a man who viewed a woman as merely a prostitute would not become enraged when another man sat by her on a bus; the fact Villarreal had sex with appellant after the assault and did not attempt to leave that night indicated an intimate relationship from which she felt afraid to escape; and even under appellant's account, they did not merely have sex that night, but instead Villarreal spent the night, and he offered to provide food for her—actions which are also associated with a romantic relationship. We do not hold that a defendant's relationship with a prostitute will always constitute a "dating relationship" under the applicable statute. However, under the particular facts of the present case, we conclude the evidence is sufficient to support the jury's finding of a "dating relationship."

## B.    Alleged Jury Charge Error

Despite expressly presenting only a sufficiency-of-evidence issue, appellant also asserts the following in the "Summary of the Argument" section of his appellate brief: "Also, the trial court erred in including the 'nature of conduct' definition of 'knowingly' in the jury charge even though assault by impeding breathing is a 'result of conduct' offense. This improperly enlarged the mens rea necessary for conviction in violation of [appellant's] rights." Appellant arguably waived this contention by failing to present any further argument, with citations to the record and authority. *See Muhammed v. State*, 331

S.W.3d 187, 195 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *see also* Tex. R. App. P. 38.1(i). Nevertheless, we will consider his complaint.

Assault by causing bodily injury is a "result-oriented" offense, meaning the defendant must have possessed a requisite culpable mental state relative to the result of his conduct. *See Landrian v. State*, 268 S.W.3d 532, 533, 537 (Tex. Crim. App. 2008); *see also* Tex. Penal Code Ann. § 22.01(a)(1). Further, to support conviction of a felony offense under section 22.01(b)(2)(B), the defendant must have possessed a requisite culpable mental state to "imped[e] the normal breathing or circulation of the blood of the person . . . ." Tex. Penal Code Ann. § 22.01(b)(2)(B). In the abstract portion of the charge, the trial court indeed included a "nature of conduct" definition of "knowingly." However, appellant failed to object to the charge; therefore, we review any alleged charge error for egregious harm. *See Bluitt v. State*, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004); *Isenhower v. State*, 261 S.W.3d 168, 175 (Tex. App.—Houston [14th Dist.] 2008, no pet.). An error resulting in egregious harm is one that affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Hutch v. State*, 922 S.W.2d 166, 171 (Tex. Crim. App. 1996). We consider the degree of harm in light of (1) the entire jury charge, (2) the state of the evidence, including contested issues and weight of the probative evidence, (3) arguments of counsel, and (4) any other relevant information revealed by the record as a whole. *Ngo v. State*, 175 S.W.3d 738, 750 n.48 (Tex. Crim. App. 2005); *Isenhower*, 261 S.W.3d at 176.

In the abstract portion of the charge, the trial court also correctly included the applicable "result of conduct" definition of "knowingly." Relative to the definition of "intentionally," the trial court included only the applicable "result of conduct" definition. Further, in the abstract portion, the trial court correctly instructed that a person commits assault if he "intentionally or knowingly causes bodily injury to another" and the offense is a felony if, among other elements, "the assault is committed . . . by intentionally or knowingly impeding the normal breathing or circulation of the blood of the person . . . ." *See* Tex. Penal Code Ann. §§ 22.01(a)(1), 22.01(b)(2)(B). Then, in the application

6

portion, the trial court correctly instructed that the jury must find appellant guilty of the offense if, among other elements, he "intentionally or knowingly cause[d] bodily injury to [Villarreal] . . . by impeding the normal breathing or circulation of the blood of [Villarreal]." *See id.* Consequently, in both the abstract and application portions, the trial court effectively limited the jury to considering the "result of conduct" definition of "knowingly" when deciding whether appellant committed the offense. Accordingly, appellant was not egregiously harmed by additional inclusion of the "nature of conduct" definition of "knowingly" because, contrary to his suggestion, the court did not alter "the mens rea necessary for conviction." *See Patrick v. State*, 906 S.W.2d 481, 493 (Tex. Crim. App. 1995). We overrule appellant's contention in his "Summary of the Argument."

We affirm the trial court's judgment.


/s/     Charles W. Seymore
        Justice


Panel consists of Chief Justice Hedges and Justices Seymore and Brown

Do Not Publish — TEX. R. APP. P. 47.2(b).

.